UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
FEDERAL INSURANCE COMPANY,                              :
                                                        :
                    Plaintiffs,                         :     No. 10 Civ. 1160 (RJS)
                                                        :
        v.                                              :
                                                        :
THE ESTATE OF IRVING GOULD, MEHDI                       :
ALI, ALEXANDER M. HAIG, JR., THE                        :
ESTATE OF RALPH SELIGMAN, BURTON                        :
WINBERG and J. EDWARD GOFF,                             :
                                                        :
                    Defendants.                         :
------------------------------------------------------------x
                                                        :
THE ESTATE OF IRVING GOULD, MEHDI                       :
ALI, ALEXANDER M. HAIG, JR., THE                        :
ESTATE OF RALPH SELIGMAN, BURTON                        :
WINBERG and J. EDWARD GOFF,                             :
                                                        :
                    Third-Party Plaintiffs,             :
                                                        :
        v.                                              :
                                                        :
CHARTIS INSURANCE COMPANY OF                            :
CANADA (f/k/a American Home Assurance                   :
Company (Canada Branch)) and TRAVELERS                  :
CASUALTY AND SURETY COMPANY (f/k/a                      :
The Aetna Casualty and Surety Company),                 :
                                                        :
                    Third-Party Defendants.             :
                                                        :
------------------------------------------------------------x

**THIRD PARTY DEFENDANT TRAVELERS CASUALTY
AND SURETY COMPANY'S (f/k/a THE AETNA
CASUALTY AND SURETY COMPANY) MEMORANDUM OF LAW IN
<u>SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

Travelers Casualty and Surety Company's (f/k/a the Aetna Casualty and Surety

Company) ("Travelers") submits this memorandum of law in support of its motion for judgment

1

on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Travelers seeks a holding, on the face of the pleadings and the insurance policies, that coverage provided by the excess insurance policy issued by Travelers to Commodore International Limited ("Commodore"), has not been triggered and that the policy does not drop down to provide coverage to the former Commodore directors and officers ("D&Os").

PRELIMINARY STATEMENT

One of the issues fundamental to the risk/reward analysis that is the essence of underwriting an insurance policy, is whether or not the policy is excess of underlying coverage layers.  Underlying coverage layers mean a potential loss must be greater in order for policy coverage to attach.  Therefore, underlying coverage layers also mean the likelihood the excess insurer will ultimately pay a loss is reduced, thereby making the insurer more likely to accept the risk and charge a lower premium.   Indeed, the existence of underlying coverage layers not only affects the point at which coverage will attach, underlying layers also give the excess insurers comfort that underlying carriers will have the economic incentive to examine and adjust the claim in a careful and reasonable way, monitoring defense counsel and settling the claim within the lower policy layers if reasonably possible.

Thus, the existence and maintenance of underlying coverage layers and the mandatory exhaustion of those layers by payment of claims, are bargained for and important preconditions to coverage under Travelers' excess liability insurance policy in issue in this case.  The enforceability of those terms is the crux of the issue before the Court on the present series of motions.  Specifically, in this case, Travelers' predecessor entity, the Aetna Casualty and Surety Company issued an excess directors and officers liability policy, Policy No. 095 LB 095 000 440 BCA, (the "Travelers Policy") to Commodore for the policy period from April 28, 1994 to

November 8, 1997.  The Travelers Policy was near the very top of a nine layer, $51 million limit of liability, directors and officers liability insurance program procured by Commodore.  The Travelers Policy provides the seventh layer of excess coverage (*i.e.* eighth layer including the primary policy) and has a Limit of Liability of $10 million in excess of $40 million in underlying insurance.  (*See* Third Party Complaint attached at Declaration of Rachel V. Stevens in Support Federal Insurance Company's Motion for Judgment on the Pleadings ("Stevens Decl."), dated December 15, 2010, Ex. 4 at p. 5).

Federal Insurance Company ("Federal") issued two of the seven lower layers of insurance (the "Federal Policies").  Pursuant to the Court's direction, in an attempt to limit redundant briefing, Travelers hereby joins in, and incorporates by reference as if fully set forth herein, Federal Insurance Company's Motion for Judgment on the Pleadings [ECF No. 38] and Federal Insurance Company's Memorandum of Law in Support of its Motion for Judgment on the Pleadings [ECF No. 40] (collectively, the "Federal Submission").  This brief is submitted only for the purpose of bringing before the Court the applicable provisions of the Travelers Policy and some unique aspects of its position.

One aspect of Traveler's unique position results from the mere fact that it is excess to the Federal Policies.  Because there is no doubt that Federal is able to respond to the Claim (and there is no suggestion that defense expenses are likely to exhaust Federal's remaining limits), besides the arguments in the Federal Submission, Travelers has the additional argument that it cannot possibly be asked to respond until the two Federal Policies, and possibly the eighth excess

policy (the "Chartis Policy") issued by American Home Insurance Company ("Chartis"), are exhausted.[1]

Travelers will not burden the record with additional factual recitation regarding Commodore's 1994 bankruptcy and the numerous lawsuits subsequently filed against Commodore and its directors and officers. As explained in the Federal Submission, all but one of these suits – *Wilson v. Gould, et al.*, 1994 No. 473/581 filed in the Supreme Court of the Commonwealth of the Bahamas (the "Bahamian Litigation") – has been resolved. Despite the costs of the Bahamian Litigation and all of those prior, resolved actions, only the primary policy, providing $10 million of coverage, has been exhausted by actual payment. According to the pleadings, there has also been partial exhaustion of one of the Federal layers, but so far as Travelers understands, it is not expected that defense expenses will come close to reaching $40 million. Indeed, it is not expected that such expenses will exceed the remaining Federal limits should it be required to continue to advance defense expenses.

---

[1] As explained in the Federal Submission, Chartis (American Home Insurance Company) issued a $1 million limit of liability policy, which is nominally excess of the Travelers Policy. Travelers understands that the Third Party Plaintiffs are taking the position that differences in conditions in the Chartis Policy require it to drop down into the insolvent layer even if the Federal and Travelers policies do not. Travelers takes no position on that issue at this time, while reserving all of its rights. However, were the Court to hold that the differences in conditions in the Chartis Policy do require it, unlike the Travelers Policy, to drop down and "infill" the first insolvent coverage layer, then the Travelers Policy would be excess to the Chartis Policy as well.

Nevertheless, there allegedly remains the possibility that an adverse result in the Bahamian Litigation (or settlement) might possibly reach $40 million. Accordingly, Travelers is seeking, by this motion, a holding that it is not required to adjust the claim until such time as the underlying coverage has been exhausted by the payment of $40 million in "Loss" as defined in the Travelers Policy.

## ARGUMENT

I. <u>The Travelers Policy Affords No Coverage Until the Underlying Policies have been Exhausted by the Payment of Loss</u>

A graphic coverage chart is contained in the Federal Submission. As can be seen there, the Travelers Policy is plainly excess to the primary and six other excess layers of insurance. Beyond the two Federal layers, and the Chartis (American Home) primary layer, the Travelers Policy is excess to two policies issued by The Home Insurance Company ("The Home") and two issued by Reliance Insurance Company ("Reliance").

In addition to its own terms, the Travelers Policy follows form to the "immediately underlying" Policy. It also clearly provides that coverage is triggered only upon exhaustion of the underlying policies:

> Coverage hereunder shall attach only after all such Underlying Insurance has been exhausted and shall then apply in conformance with the terms conditions and limitations of the Policy immediately underlying this Policy except as specifically set forth in the terms condition and limitations of this Policy.

(*See* Declaration of James Sandnes in Support of Third Party Defendant Travelers Casualty & Surety Company's Motion for Judgment on the Pleadings ("Sandnes Decl."), dated December 15, 2010, Ex. 1 at Insuring Agreement).

In other words the Travelers Policy follows the form of the sixth excess policy, which was issued by The Home. (Sandnes Decl. Ex. 2). That Home Policy, in turn, has some of its

own limitations and conditions, and otherwise follows form to the remaining underlying policies. (*Id.*) Importantly, the Travelers Policy incorporates a provision from The Home Policy that its coverage can be no greater than that afforded by the lower layers. (Sandnes Decl. Ex. 2 at Insuring Agreement.) Thus, while the Travelers Policy may be more restrictive in coverage than the lower layers, it cannot be more expansive. Accordingly, if the Federal Policy affords no coverage, *a fortiori*, the Travelers Policy does not. [2]

The Travelers Policy also contains two provisions particularly relevant to underlying insurance. The first requires maintenance of underlying insurance during the policy period:

> III. MAINTENANCE OF UNDERLYING INSURANCE
>
> All of the Underlying Insurance scheduled in Item 4 of the Declarations ***shall be maintained during the Policy Period*** in full effect and affording coverage at least as broad as the Primary Policy, except for any reduction of the aggregate limit(s) of liability available under the Underling Insurance solely by reason of payment of losses thereunder. Failure to comply with the foregoing shall not invalidate this Policy but the Underwriter shall not be liable to a greater extent than if this condition had been complied with, provided that nothing in this provision shall be deemed to negate Paragraph XII of this Policy [regarding termination of Policy.]. . . .

---

[2] The Travelers Policy contains additional provisions that are relevant to coverage that are not addressed in this motion. For example, the Travelers Policy incepts on a different date than the Federal Policies. Given the limited scope of the motions approved in the pre-motion conference by the Court, Travelers will not address other possible defenses here. Instead, Travelers hereby reserves its rights to assert additional coverage defenses including, but not limited to, that the Bahamian Litigation is related to a prior or pending litigation for which there is no coverage pursuant to the Traveler Policy, as amended by Endorsement No. 1 to the Travelers Policy.

(Sandnes Decl. Ex. 1 at Maintenance of Underlying Insurance (emphasis added).)  This provision, in clear and unambiguous terms, provides that the Travelers Policy does not "drop down."  There is simply no way to read the Policy as requiring drop down.  As the cases cited in the Federal Submission make clear, when there is such a provision, under applicable Pennsylvania law, the insurer is not required to drop down.

The second relevant section interplays directly with the Insuring Agreement.  As quoted in full above, the Insuring Agreement provides that coverage "shall attach only after all such Underlying Insurance has been exhausted."  In turn, the section of the Travelers Policy entitled "Depletion of Underlying Limits" makes clear that exhaustion expressly required by the Insuring Agreement must be "solely as the result of actual payment of losses thereunder by the applicable Insurers."  It provides:

> In the event of the depletion of the limit(s) of liability of the Underlying Insurance *solely as the result of actual payment of losses thereunder by the applicable Insurers*, this Policy shall, subject to the limit of liability of the Underwriter and to the other terms of this Policy, continue to apply to losses as excess insurance over the amount of insurance remaining under such Underlying Insurance.

(Sandnes Decl. Ex. 1 at Depletion of Underlying Limits (emphasis added).)  Accordingly, this provision defines when, and under what conditions, the Travelers Policy coverage will be triggered in accordance with the Insuring Agreement's exhaustion requirement.

As explained in the Federal Submission, Reliance and The Home (collectively, the "Liquidating Carriers"), have themselves gone into liquidation.  So, even were the Loss resulting from the claim to reach $40 million, the Travelers Policy is only triggered when the underlying insurers have exhausted their limits by the "*actual payment of loss*."  The Third Party Complaint is devoid of any assertion that the Liquidating Carriers will not pay anything.  However, assuming that ultimately the Liquidating Carriers will not fully exhaust their limits by the actual

payment of Loss, the question arises what effect do those insolvencies have on Travelers' putative liability.[3]

As explained above, certainly the no-drop down provision means that Travelers' coverage does not attach until the Loss exceeds $40 million. Moreover, under the exhaustion requirement of the Insuring Agreement, explicitly at least $40 million in Loss actually has to be paid as a precondition to liability attaching under the Travelers Policy. To hold otherwise would be in clear contradiction to the plain language of the Travelers Policy and the relevant law, and would result in granting coverage for which Travelers did not bargain and was not paid.

However, the Travelers Policy not only requires the "actual payment of loss" but also that the payment be made pursuant to the underlying polices and that it be paid by the insurance companies issuing those policies. (*Id*. ("payment of losses thereunder ***by the applicable Insurers***")). Unless and until there is some allegation or evidence that the D&Os are prepared to and will pay the portion of $40 million not covered by Federal and Chartis (at least $19 million and possibly $30 million), the question of whether so-called "in-fill" by the D&Os – the payment of Loss by the insured persons personally, out of their own pockets – is sufficient to satisfy the exhaustion requirement of the Travelers Policy, probably is academic and unripe. Nevertheless, based on statements made in the pre-motion conference, it appears that the D&Os are going to argue, in their motion, as a fallback position, that so long as someone (presumably the D&Os personally) pay the Loss equal to limits of the underlying coverage, the Travelers coverage

---

[3] While it may be inferred that the Liquidating Carriers' insolvencies means they will not pay 100% of all claims made against them, it equally may be inferred that they, as regulated, domestic (so-called "admitted") carriers, had substantial assets and will make some payment on their policy losses.

(totaling $40 million) attaches.  When and if that argument is made, Travelers will address it in response.

## CONCLUSION

For all of the reasons set forth above and in the Federal Submission, the Court should declare that Travelers has no obligation to drop down or to provide coverage to the D&Os and grant such other further relief that the Court deems just and proper.

Dated:       New York, New York
             December 15, 2010

*Of counsel:*

  Tammy Yuen

BOUNDAS, SKARZINSKI, WALSH &
  BLACK LLC

By:      /s
         James Sandnes (JS-8944)

One Battery Park Plaza
New York, New York 10004
(212) 820-7700
jsandnes@bswb.com

*Attorneys for Third-Party Defendant Travelers
  Casualty and Surety Company*

4821-5892-1224

9