UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL INSURANCE COMPANY,<br><br>                                      Plaintiff,<br><br>- against -<br><br>THE ESTATE OF IRVING GOULD, et al.,<br><br>                                      Defendants. | No. 10 Civ. 1160 (RJS) |
| THE ESTATE OF IRVING GOULD, et al.,<br><br>                                      Third-Party Plaintiffs,<br><br>- against -<br><br>CHARTIS INSURANCE COMPANY OF CANADA (f/k/a American Home Assurance Company (Canada Branch)) and TRAVELERS CASUALTY AND SURETY COMPANY (f/k/a The Aetna Casualty and Surety Company)<br><br>                                      Third-Party Defendants. | |

## **DEFENDANTS' STATEMENT OF UNDISPUTED FACTS**

Pursuant to Local Civil Rule 56.1, Defendants The Estate Of Irving Gould, Mehdi Ali, The Estate of Alexander M. Haig, Jr., The Estate Of Ralph Seligman, Burton Winberg and J. Edward Goff (collectively, "Defendants") makes this Statement of Undisputed Material Facts in support of its Motion for Partial Summary Judgment on the Insurance Companies' Exhaustion Defenses.

NYDOCS1-958852.1

1. Commodore, once an industry leader in the computer business, filed for bankruptcy in 1994 and is no longer in operation. Wong Dec., ¶ 2.

2. Beginning in 1993, a number of lawsuits were filed against Commodore and its former directors and officers. All of the lawsuits have been resolved except for the action styled Wilson v. Gould et al., 1994 No. 473/581, which is pending in the Commonwealth of the Bahamas (the "Bahamas Litigation"). Wong Dec., ¶ 4.

3. The Bahamas Litigation was brought by Liquidators of Commodore and Commodore Electronics Limited ("CEL") against the former directors of Commodore and CEL in 1998. Wong Dec., ¶ 5; Ex. J.

4. The liquidators have asserted damages in excess of $100 million against the Commodore and CEL directors. Wong Dec., ¶ 5.

5. Defendants have incurred approximately $14 million in legal costs in defending the Bahamas Litigation and other litigations filed since policy renewal and continue to incur such costs. Wong Dec., ¶ 6.

6. Trial of the matter will commence in 2011. As trial near, the potential for settlement will be explored. The availability of insurance coverage will inform the directors as they proceed to trial or settlement negotiations. Wong Dec., ¶ 7, 8.

7. Commodore purchased a $50 million tower of directors and officers liability insurance for the period of November 8, 1993 through November 8, 1997, as well as a separate directors and officers insurance and company reimbursement policy with an additional $1 million in limits. Wong Dec., ¶ 3; Exs. A-I.

8. The policies provide coverage for claims of wrongful acts of Commodore's directors and officers. Wong Dec., Exs. A-I.

9. The claims in the Bahamas Litigation arise from allegations of wrongful acts by Commodore's former directors and officers. Wong Dec., Ex. J.

10. Commodore purchased Directors and Officers Insurance and Company Reimbursement Policy No. 970-4185 from American Home Assurance Company for directors and officers liability coverage for the policy period of November 8, 1991 through November 8, 1992, extended by endorsement through November 8, 1997 (herein the "Primary Policy"). Wong Dec., Ex. A.

11. The Insuring Agreement of the Primary Policy provides: "This policy shall pay the Loss of each and every Director or Officer of the Company arising from any claim or claims first made against the Directors or Officers and reported to the Insurer during the Policy Period or the Discovery Period (if applicable) for any alleged Wrongful Act in their respective capacities as Directors or Officers of the Company, except for and to the extent that the Company has Indemnified the Directors or Officers. The Insurer shall, in accordance with and subject to Clause 9, advance to each and every Director and Office the Defense Costs of such claim or claims prior to their final disposition." Wong Dec., Ex. A.

12. "Defense Costs" is defined in the Primary Policy as "reasonable and necessary fees, costs and expenses consented to by the Insurer . . . resulting solely from the investigation, adjustment, defense and appeal of any claims against the Insureds." "Loss" is defined to include "damages, judgments, settlement and Defense Costs." Wong Dec., Ex. A, at Clause 2(b) and (d).

13. Clause 9 of the Primary Policy reads, in relevant part: Under Coverage A, except as hereinafter stated, the Insurer shall advance Defense Costs prior to the final disposition of the claim, unless such Defense Costs have been advanced by the Company. Such advance

payments by the Insurer shall be repaid to the Insurer by the Insureds, severally according to their respective interests, in the event and to the extent that the Insureds shall not be entitled under the terms and conditions of this policy to payment of such Loss. Wong Dec., Ex. A, at Clause 9.

14. The $10 million limit of the Primary Policy has been exhausted by payment of defense costs in the Bahamas Litigation and other now-resolved litigations. Wong Dec., ¶¶ 9, 10.

15. Federal sold to Defendants two Directors and Officers Liability and Reimbursement Excess Policies (the "Federal Policies") that comprise Commodore's second and fifth excess policies. The Federal Policies' policy periods ran from November 8, 1993 through November 8, 1994, extended by endorsement to November 8, 1997 and each have $5 million in policy limits. See Wong Dec., Exs. C, F.

16. The Federal Policies provide: "Coverage hereunder shall attach only after all such "Underlying Insurance" has been exhausted by payment of claim(s) and shall then apply in conformance with the terms, conditions, exclusions and endorsements of the Primary Policy, together with all limitations, restrictions or exclusions contained in or added by endorsement to any other "Underlying Insurance", except as specifically set forth in the terms and conditions and endorsements of this policy." See Wong Dec., Exs. C, Endorsement 3; F, Endorsement 4.

17. The Federal Policies contain a Maintenance of Underlying Insurance provision, the first paragraph of which reads: "All of the Underlying Policy(ies) scheduled in Item 4 of the Declarations shall be maintained during the Policy Period in full effect and affording coverage at least as broad as the Primary Policy, except for any reduction of the aggregate limit(s) of liability available under the Underlying Insurance solely by reason of

payment of losses thereunder. Failure to comply with the foregoing shall not invalidate this policy but the Company shall not be liable to a greater extent than if this condition had been complied with." Wong Dec., Exs. C, F.

18. Travelers sold to Defendants a Directors and Officers Liability and Reimbursement Excess Policy, No. 095 LB 06 000 440 BCA for the policy period of November 8, 1993 to November 8, 1997, that sits at the seventh excess layer of the D&O Tower and has a $10 million policy limit. Wong Dec., Ex. H.

19. The Travelers Policy states that "Coverage hereunder shall attach only after all such Underlying Insurance has been exhausted and shall then apply in conformance with the terms, conditions and limitations of the Policy immediately underlying this Policy except as specifically set forth in the terms, conditions and limitations of this Policy." Wong Dec., Ex. H.

20. The Travelers Policy contains a Maintenance of Underlying Insurance provision, the first paragraph of which reads: "All of the Underlying Insurance scheduled in Item 4 of the Declarations shall be maintained during the Policy Period in full effect and affording coverage at least as broad as the Primary Policy, except for any reduction of the aggregate limit(s) of liability available under the Underlying Insurance solely by reason of payment of losses thereunder. Failure to comply with the foregoing shall not invalidate this policy but the Underwriter shall not be liable to a greater extent than if this condition had been complied with, provided that nothing in this provision shall be deemed to negate Paragraph XII of this Policy." Wong Dec., Ex. H.

21. Chartis sold Defendants Directors and Officers Insurance and Company Reimbursement Policy No. 9704712 for the policy period of November 8, 1993 to November 8, 1994, extended by endorsement to November 8, 1997 (the "Chartis Policy"). The Chartis Policy

has a limit of liability of $1,000,000 with a total premium paid by Defendants of $905,000. The Chartis Policy contains the identical Insuring Agreement and duty to advance defense costs as the Primary Policy (also sold by Chartis). See Wong Dec., Ex. I.

22. The Chartis Policy contains a Limit of Liability provision which reads "$1,000,000 US excess of $50,000,000 US". See Wong Dec., Ex. I, at Endorsement 7.

23. The Chartis Policy contains an Other Insurance provision which provides "[s]uch insurance is provided by this policy shall apply only as excess over any other valid and collectible insurance." See Wong Dec., Ex. I, at Clause 14.

24. Home Insurance Company of Indiana and Reliance Insurance Company sold to Commodore a total of four directors and officers liability policies for the policy period covering November 8, 1993 through November 9, 1997. Wong Dec., Exs. B, D, E and G.

25. Home Insurance Company of Indiana and Reliance Insurance Company are insolvent. Wong Dec., ¶ 10.

ANDERSON KILL & OLICK, P.C.

December 15, 2010

By: /s/ Rene F. Hertzog
Finley T. Harckham
Alex D. Hardiman
Rene F. Hertzog

1251 Avenue of the Americas
New York, NY 10020
Telephone: 212-278-1000
Facsimile: 212-278-1733

Attorneys for Defendants