DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500
*Attorneys for Plaintiff Federal Insurance Company*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
FEDERAL INSURANCE COMPANY,

                Plaintiff,

      – against –

THE ESTATE OF IRVING GOULD, MEHDI
ALI, ALEXANDER M. HAIG, JR., THE
ESTATE OF RALPH SELIGMAN, BURTON
WINBERG AND J. EDWARD GOFF,

                Defendants.
---------------------------------------------------------------
THE ESTATE OF IRVING GOULD, MEHDI
ALI, ALEXANDER M. HAIG, JR., THE
ESTATE OF RALPH SELIGMAN, BURTON
WINBERG AND J. EDWARD GOFF,

              Third-Party Plaintiffs,

      – against –

CHARTIS INSURANCE COMPANY OF
CANADA (f/k/a American Home Assurance
Company (Canada Branch)) and TRAVELERS
CASUALTY AND SURETY COMPANY (f/k/a
the Aetna Casualty and Surety Company),

             Third-Party Defendants.
---------------------------------------------------------------x

No. 10 Civ. 1160 (RJS)

**FEDERAL INSURANCE COMPANY'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**

                              Joseph G. Finnerty III
                              Rachel V. Stevens
                              DLA PIPER LLP (US)
                              1251 Avenue of the Americas
                              New York, New York 10020
                              (212) 335-4500

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

I. PENNSYLVANIA LAW GOVERNS ALL QUESTIONS RELATED TO THE FEDERAL EXCESS POLICIES AND CHOICE-OF-LAW DISCOVERY IS UNNECESSARY ........................................................................................................... 2

II. THE EXPRESS TERMS OF THE FEDERAL EXCESS POLICIES' EXHAUSTION REQUIREMENT APPLIES HERE TO PRECLUDE ADVANCEMENT OF DEFENSE COSTS ................................................................... 3

    A. The Exhaustion Requirement Of The Federal Excess Policies Applies Irrespective Of The Amount Of Loss Claimed By Defendants ............................ 4

    B. The Federal Excess Policies Are Unambiguous And Defendants' Interpretation Of The Policies Is Unreasonable ..................................................... 6

CONCLUSION ............................................................................................................................. 10

TABLE OF AUTHORITIES

Page(s)

CASES

Ambassador Associates v. Corcoran,
    79 N.Y.2d 871, 581 N.Y.S.2d 276 (1992) ............................................................................. 8

American Lumbermens Mutual Casualty Co. v. Lumber Mutual Casualty Insurance Co.,
    251 A.D. 231, 295 N.Y.S. 321 (1st Dep't 1937) .................................................................... 8

Brosovic v. Nationwide Mutual Insurance Co.,
    841 A.2d 1071 (Pa. Super. 2004) ........................................................................................... 7

Comerica Inc. v. Zurich American Insurance Co.,
    498 F. Supp. 2d 1019 (E.D. Mich. 2007) ............................................................................... 5

General Refractories Co. v. Allstate Insurance Co.,
    No. CIV. A. 89-7924, 1994 WL 246375 (E.D. Pa. June 8, 1994) ..................................... 5, 9

Girard Trust Bank v. Life Insurance Co. of North America,
    243 Pa. Super. Ct. 152, 364 A.2d 495 (1976) ........................................................................ 9

Gladstone v. D.W. Ritter Co.,
    133 Misc.2d 922, 508 N.Y.S.2d 880 (Sup. Ct. Columbia Cty. 1986) .................................... 8

HLTH Corp. v. Agricultural Excess & Surplus Insurance Co.,
    No. 07C-09-102, 2008 WL 3413327 (Del. Super. July 31, 2008) ......................................... 9

J. Kinderman & Sons, Inc. v. United National Insurance Co.,
    406 Pa. Super. 37, 593 A.2d 857 (Pa. Super. Ct. 1991),
    aff'd, 619 A.2d 1058 (Pa. 1993) ............................................................................................. 6

M.A.G. Enterprises, Inc. v. National Union Fire Insurance Co.,
    No. 3835 Aug. Term 2002, 2005 WL 503053 (Pa. Comm. Pl. Feb. 16, 2005) ............. 4, 6, 9

Maryland Casualty Co. v. Horace Mann Insurance Co.,
    551 F. Supp. 907 (W.D. Pa. 1982), aff'd, 720 F.2d 664 (3d Cir. 1983) ................................. 8

Maryland Casualty Co. v. W.R. Grace & Co.,
    No. 88 Civ. 4337 (JSM), 1992 WL 142038 (S.D.N.Y. June 9, 1992) ................................... 3

Nationwide Mutual Insurance Co. v. Chiao,
    186 Fed. Appx 181 (3d Cir. 2006) ......................................................................................... 7

Qualcomm, Inc. v. Certain Underwriters at Lloyd's London,
    73 Cal. Rptr. 3d 770 (Cal. App. 2008) ................................................................................... 5

## TABLE OF AUTHORITIES

St. Vincent's Hospital & Medical Center v. Insurance Co. of North America,
  117 Misc.2d 665, 457 N.Y.S.2d 670 (Sup. Ct. N.Y. Cty. 1982) .................................. 5

Toffler Associates, Inc. v. Hartford Fire Insurance Co.,
  651 F. Supp. 2d 332 (E.D. Pa. 2009) .......................................................................... 8

U.S. Fidelity & Guaranty Co. v. Treadwell Corp.,
  58 F. Supp. 2d 77 (S.D.N.Y. 1999) ............................................................................ 5

VCG Special Opportunities Master Fund Ltd. v. Citibank, N.A.,
  594 F. Supp. 2d 334 (S.D.N.Y. 2008) ........................................................................ 2

Zeig v. Massachusetts Bonding & Insurance,
  23 F.2d 665 (2d Cir. 1928) ......................................................................................... 4


OTHER AUTHORITIES

Fed. R. Civ. P. 12(c) ................................................................................................ passim

Federal Insurance Company ("Federal"), submits this reply memorandum of law in further support of its motion for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, seeking a declaration that the excess directors and officers liability insurance policies Federal issued to Commodore International Limited ("Commodore") have not been triggered and that Federal, accordingly, has no obligation to drop down and advance Defense Costs to Commodore's former officers and directors.[1]

## PRELIMINARY STATEMENT

Federal has established that the express terms of the Federal Excess Policies state that Federal's coverage obligation is not triggered unless all Underlying Insurance is "exhausted by payment of claims." Accordingly, Federal is not obligated to drop down to advance the Defense Costs that Defendants now seek because, as Defendants have conceded, the Underlying Insurance provided by Reliance and The Home has not been exhausted by payment of claims. In fact, in their Summary Judgment Memorandum, Defendants acknowledge that when, as here, an excess insurance policy requires maintenance of underlying insurance, identifies a schedule of underlying insurance, and requires exhaustion of underlying insurance "before its coverage

---

[1] Unless otherwise noted, defined terms have the same meaning as set forth in Federal's opening Rule 12(c) Memorandum. Defendants' memorandum of law in support of their separate Motion for Partial Summary Judgment is referred to as "Defendants' Summary Judgment Memorandum," Federal's opposition to that motion is referred to as "Federal's Opposition Memorandum," and Defendants' opposition to Federal's Rule 12(c) Memorandum is referred to as "Defendants' Rule 12(c) Opposition."

obligations are triggered," Pennsylvania law does not require that excess carrier to drop down and pay any amount. (See Def. Summary Judgment Mem., at 17.)

Here, in opposition to Federal's motion, Defendants do not argue otherwise. Rather, they argue that the exhaustion requirement in the Federal Excess Policies applies only if Loss exceeds the layers of Underlying Insurance. (See Def. Rule 12(c) Opp. at 11-12.) This argument overlooks the fact that, irrespective of the level of the Loss incurred by Defendants (which has undisputedly not reached the level of the Federal Excess Policies), the insurance underlying the Federal Excess Policies has not been exhausted. Defendants also attempt to suggest an impossibly tortured interpretation of the Federal Excess Policies which, as explained below, the Court should simply ignore. (See infra.) Under the circumstances presented here, Federal has no obligation to drop down to advance Defense Costs and its motion for judgment on the pleadings should accordingly be granted.

## ARGUMENT

I. PENNSYLVANIA LAW GOVERNS ALL QUESTIONS RELATED TO THE FEDERAL EXCESS POLICIES AND CHOICE-OF-LAW DISCOVERY IS UNNECESSARY

In response to Federal's argument that Pennsylvania law applies to the questions before the Court (see Federal's Rule 12(c) Mem., at 9-10; Federal's Opp. Mem., at 10-13), Defendants assert that there is no conflict between Pennsylvania and New York law on the issues presented on this motion and that, if a conflict does exist, "discovery will be necessary" to determine what law should apply to the questions before the Court. (Def. Rule 12(c) Opp. at 10.)

Not so. In considering Federal's motion for judgment on the pleading, the Defendants' factual allegations are accepted as true, and all of the documents attached to the pleadings are part of the record on the motion. See VCG Special Opportunities Master Fund Ltd. v. Citibank, N.A., 594 F. Supp. 2d 334, 339-40 (S.D.N.Y. 2008). Federal has already identified the decisive

2

contacts with Pennsylvania, and each of them is established on the record here in either the pleadings or the policies. (See Federal's Opp. Mem. at 11-12.) In opposition, Defendants have not identified—nor can they—any substantial contacts supporting the application of New York law, or any other law, nor do they suggest that discovery could point to a different jurisdiction with a more substantial relationship to this dispute than Pennsylvania. As such, discovery is not necessary, and the Court should decide the choice of law question and apply Pennsylvania law to all questions related to coverage under the Federal Excess Policies. See, e.g., Maryland Cas. Co. v. W.R. Grace & Co., No. 88 Civ. 4337 (JSM), 1992 WL 142038, at *3 (S.D.N.Y. June 9, 1992) (applying New York law uniformly to all questions of coverage related to policy there in issue to avoid possibility that "the same policy with the identical insured could have different interpretations across state lines").

II.  THE EXPRESS TERMS OF THE FEDERAL EXCESS POLICIES' EXHAUSTION REQUIREMENT APPLIES HERE TO PRECLUDE ADVANCEMENT OF DEFENSE COSTS

Federal's Rule 12(c) Memorandum established, and Defendants effectively concede (see Def. Summary Judgment Mem., at 16, 17), that Federal is not obligated to drop down to advance Defense Costs because all insurance underlying the Federal Excess Policies has not been exhausted by payment of claims. Defendants' argument in opposition, that the exhaustion requirement of the Federal Excess Policies applies only where the Loss exceeds all Underlying Insurance, has no place in Federal's drop down motion. (See Def. Rule 12(c) Mem., at 11-19.) Alternatively, under a tortured interpretation of the Federal Excess Policies, Defendants argue that it is ambiguous whether Federal intended to be excess over all Underlying Insurance. (See id., at 19-25.)

Defendants are wrong on both arguments. Consistent with Pennsylvania law, this Court should disregard Defendants' obfuscation and find that the unambiguous terms of the Federal

3

Excess Policies require that all Underlying Insurance must be exhausted by payment of claims before Federal has any coverage obligation, and Federal has no obligation to drop down and advance Defense Costs.

  A. The Exhaustion Requirement Of The Federal Excess Policies Applies Irrespective Of The Amount Of Loss Claimed By Defendants

Defendants' first argument in opposition to Federal's motion repeats virtually verbatim their main argument in support of their separate motion for partial summary judgment.[2] (See Def. Rule 12(c) Opp., at 12-15.) Defendants attempt to confuse the issue by presuming with no basis in fact or law that the Federal Excess Policies' exhaustion requirement applies only in the context of their motion (i.e., where the Loss exceeds the limits of the insurance underlying the Federal Excess Policies). (See Def. Rule 12(c) Opp., at 3, 11-17.)

Defendants do not, and cannot, however, point to any term in the Federal Excess Policies or legal precept that dictates coverage for Loss, at any level, is triggered before all Underlying Insurance has been exhausted by payment of claims. The simple fact remains that the language of the Federal Excess Policies—"[c]overage hereunder shall attach only after all such **"Underlying Insurance"** has been exhausted by payment of claim(s)"—applies regardless of whether or not the Loss incurred by the Defendants has reached the layers of the Federal Excess Policies. Here, the failure of the Defendants to exhaust the Underlying Insurance due to the insolvency of Reliance and The Home means that Federal has no obligation to drop down to advance Defense Costs. See M.A.G. Enters., Inc. v. Nat'l Union Fire Ins. Co., No. 3835 Aug.

---

[2] Defendants' argument arising out of their reliance upon Zeig v. Mass. Bonding & Ins., 23 F.2d 665 (2d Cir. 1928), and the cases that follow its reasoning, is unavailing here for all of the reasons identified by Federal in its Opposition Memorandum, at 17-22.

4

Term 2002, 2005 WL 503053, at *5 (Pa. Comm. Pl. Feb. 16, 2005) ("an excess insurer is not required to drop down to provide primary coverage where the underlying primary insurer is insolvent, unless required to do so by the policy itself"); Gen. Refractories Co. v. Allstate Ins. Co., No. CIV. A. 89-7924, 1994 WL 246375, at *7 (E.D. Pa. June 8, 1994) (excess carrier "is not required to drop down and provide [insured] with primary coverage for the period in which [insolvent primary carrier] was the primary insurer").[3]

Exhaustion of all Underlying Insurance through payment of claims is a condition precedent to coverage under the Federal Excess Policies. It applies whether Defendants seek advancement of Defense Costs or indemnity for a future settlement or judgment. This principle is rooted in case law, and Comerica Inc. v. Zurich Am. Ins. Co., 498 F. Supp. 2d 1019 (E.D. Mich. 2007), Qualcomm, Inc. v. Certain Underwriters at Lloyd's London, 73 Cal. Rptr. 3d 770 (Cal. App. 2008), and the additional cases on which Federal relies in its Rule 12(c) Memorandum, directly support its position that the Federal Excess Policies are not triggered unless all Underlying Insurance has been exhausted by payment of claims. (See Federal's Rule 12(c) Mem., at 12-13.)

---

[3] New York law is not controlling here for the reasons outlined above, but the result on this point is the same under New York law. See, e.g., U.S. Fid. & Guar. Co. v. Treadwell Corp., 58 F. Supp. 2d 77, 113 (S.D.N.Y. 1999) (underlying insurance was not exhausted and thus excess insurer was not obligated to drop down to provide coverage); St. Vincent's Hosp. & Med. Ctr. v. Ins. Co. of N. Am., 117 Misc.2d 665, 668, 457 N.Y.S.2d 670, 672 (Sup. Ct. N.Y. Cty. 1982) (express terms of excess policy required exhaustion and underlying insurer was insolvent, accordingly excess policy was not triggered).

5

Defendants attempt to distance themselves from the Federal Excess Policies' inescapable exhaustion requirement by positing that the "policies are wholly unconcerned with whether underlying insurance even exists." (Def. Rule 12(c) Opp., at 17.) In order to arrive at this implausible conclusion, the Defendants read the "Maintenance of Underlying Insurance" provision out of existence. This undeniable term of the Federal Excess Policies provides, expressly to the contrary, that "[f]ailure to comply with the foregoing [requirement to maintain Underlying Insurance] shall not invalidate this policy, but the Company shall not be liable to a greater extent than if this condition had been complied with." (Stevens Decl., Ex. 2, at Exs. B, C.) Pennsylvania courts have considered and rejected this very argument. See M.A.G. Enters., 2005 WL 503053, at *5 (maintenance of underlying insurance language establishes intent of the parties that excess coverage attaches only "after the underlying insurance carrier's amount was fulfilled"); J. Kinderman & Sons, Inc. v. United Nat'l Ins. Co., 406 Pa. Super. 37, 41-42, 593 A.2d 857, 860 (Pa. Super. Ct. 1991) (same), aff'd, 619 A.2d 1058 (Pa. 1993).

Defendants' interpretation also injects confusion into the otherwise unambiguous terms of the Federal Excess Policies and renders superfluous the Insuring Clause and the Depletion of Underlying Limit(s) provision. As shown below, neither is permitted under well-established principles of contract interpretation.

B. The Federal Excess Policies Are Unambiguous And Defendants' Interpretation Of The Policies Is Unreasonable

Defendants predicate their second argument on a non-existent ambiguity in the Federal Excess Policies by attempting to incorporate the Other Insurance clause of the Primary Policy into the terms of the Federal Excess Policies. (See Def. Rule 12(c) Opp., at 19-25.) This interpretation runs contrary to the principles of contract interpretation given the clear and unambiguous wording of the Federal Excess Policies.

The Insuring Clause of the Federal Excess Policies provides in relevant part that:

> **Insuring Clause** [as amended by Endorsement No. 3]
>
> The Company shall provide the **"Insured"** with Insurance during the Policy Period excess of the **"Underlying Insurance"**. Coverage hereunder shall attach only after all such **"Underlying Insurance"** has been exhausted by payment of claim(s) and shall then apply in conformity with the terms, conditions, exclusions and endorsements of the **"Primary Policy"**, together with all limitations, restrictions or exclusions contained in or added by endorsement to any other **"Underlying Insurance"**, *except as specifically set forth in the terms and conditions and endorsements of this policy. . ..*

(Stevens Decl., Ex. 2, at Exs. B, C) (emphasis added). Defendants' incorporation of the Other Insurance provision of the Primary Policy—which states that "[s]uch insurance as is provided by this policy shall apply only as excess over any other valid and collective insurance" (Stevens Decl., Ex. 2, at Ex. A, ¶ 14)—into the Federal Excess Policies attempts to create an ambiguity where none exists. A court may not "torture language" to inject ambiguity into its construction of a policy where it otherwise does not exist. See, e.g., Brosovic v. Nationwide Mut. Ins. Co., 841 A.2d 1071, 1073 (Pa. Super. 2004) ("courts should try to read policy provisions to avoid ambiguities, if possible, and not torture language to create them") (citation omitted); Nationwide Mut. Ins. Co. v. Chiao, 186 Fed. Appx 181, 185 (3d Cir. 2006) (same).

The Insuring Clause of each Federal Excess Policy specifically states that it incorporates the terms of the Primary Policy "except as specifically set forth in the terms and conditions and endorsements of this policy." (Stevens Decl., Ex. 2, at Exs. B, C) (emphasis added). The Insuring Clause, the Schedule of Underlying Insurance, the Maintenance of Underlying Insurance and the Depletion of Underlying Limit(s) specifically define the coverage parameters of the Federal Excess Policies. In accordance with the "except as specifically set forth" language, the terms of the Federal Excess Policies expressly override the Primary Policy's Other

7

Insurance provision to the extent of any inconsistency. In any event, the Other Insurance clause is not even relevant to the facts at issue in this matter. This clause unambiguously applies to define the coverage that would apply under the Primary Policy in the circumstances (not present here) when two different policies concurrently provide coverage for the same Loss. See Maryland Cas. Co. v. Horace Mann Ins. Co., 551 F. Supp. 907, 908 (W.D. Pa. 1982), aff'd, 720 F.2d 664 (3d Cir. 1983) ("[t]he purpose of [an other insurance] clause is to allocate liability between insurance companies when overlapping or concurrent coverage exists in two or more policies per occurrence"). To incorporate such a clause here would be illogical and superfluous, in contravention of another fundamental rule of contract interpretation. See, e.g., Toffler Assocs., Inc. v. Hartford Fire Ins. Co., 651 F. Supp. 2d 332, 344 n.3 (E.D. Pa. 2009) ("[t]he Court must avoid interpreting the Policy in a way that makes any term meaningless or superfluous").

The Defendants' emphasis on the "valid and collectible" language of Primary Policy's Other Insurance provision is similarly without merit. This provision does not apply to define available coverage under the Federal Excess Policies. The cases Defendants cite in this regard—all of which are decided under New York law—are readily distinguishable. See Gladstone v. D.W. Ritter Co., 133 Misc.2d 922, 508 N.Y.S.2d 880 (Sup. Ct. Columbia Cty. 1986) (insurance related to an automobile accident, court determined excess policy was actually written as a primary policy and lacked standard excess policy language); Ambassador Assocs. v. Corcoran, 79 N.Y.2d 871, 581 N.Y.S.2d 276 (1992) (finding excess carrier not required to drop down; Defendants rely on dissent which in turn relies on distinguishable policy language); Am. Lumbermens Mut. Cas. Co. v. Lumber Mut. Cas. Ins. Co., 251 A.D. 231, 295 N.Y.S. 321 (1st Dep't 1937) (casualty insurance matter not involving excess insurance).

8

Defendants' effort to distinguish the cases on which Federal relies on the basis that they do not address or contain "valid and collectible" language is sophistry. This language was not relevant to the questions before those courts just like it is not relevant here. Rather, M.A.G. Enters., 2005 WL 503053, at *5; Gen. Refractories, 1994 WL 246375, at *7, and the remaining cases on which Federal relies (see Federal's Rule 12(c) Mem., at 10-11), all support the conclusion that the insolvency of an insurer providing an underlying layer of insurance does <u>not</u> trigger the obligations of an excess insurer.

Finally, recognizing perhaps that the Federal Excess Policies are not ambiguous, Defendants assert that extrinsic evidence of the custom and usage must somehow be admitted in this action. But Defendants acknowledge at the same time that such extrinsic evidence may "not contradict the plain meaning of the contract." (See Def. Rule 12(c) Opp. at 20.) For this reason, extrinsic evidence would serve no purpose in this litigation. Each of the ambiguity arguments Defendants assert are either defeated by the plain meaning of the Federal Excess Policies (as set forth above) or by the trumping provisions ("except as specifically set forth") in the Federal Excess Policies that override any conflict with the Primary Policy wording in the event of any inconsistency. Even the Defendants do not assert that this trumping provision is ambiguous. The unambiguous language of the Federal Excess Policies applies, and no additional discovery or extrinsic evidence is required.[4] See, e.g., Girard Trust Bank v. Life Ins. Co. of N. Am., 243

---

[4] To the extent Defendants point to HLTH Corp. v. Agric. Excess & Surplus Ins. Co., No. 07C-09-102, 2008 WL 3413327 (Del. Super. July 31, 2008), in support of their argument that the Court should look beyond the language of the Federal Excess Policies, they are wrong. The specific terms of a different Federal policy in a different matter does not disturb the conclusion

Pa. Super. Ct. 152, 158, 364 A.2d 495, 498 (1976) ("if the terms of the written contract are clear and unambiguous custom and usage . . . are not admissible to interpret the contract").

## CONCLUSION

For the reasons set forth above and in Federal's opening memorandum of law, Federal respectfully requests that the Court grant this motion, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, declare that Federal has no obligation to drop down and pay Defense Costs to Commodore's former officers and directors, and grant such other and further relief as the Court may deem just and proper in the circumstances.

Dated: New York, New York
February 16, 2010

DLA PIPER LLP (US)

By: _____
Joseph G. Finnerty III
Rachel V. Stevens
1251 Avenue of the Americas
New York, New York  10020
Telephone:  (212) 335-4500
Facsimile:   (212) 335-4501
E-mail:  joseph.finnertyiii@dlapiper.com
             rachel.stevens@dlapiper.com

*Attorneys for Plaintiff Federal Insurance Company*

---

that the Federal Excess Policies here are clear in directing that Federal has no obligation to drop down to advance Defense Costs.