UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
FEDERAL INSURANCE COMPANY,                  :
                                            :
                Plaintiffs,         :       No. 10 Civ. 1160 (RJS)
                                            :
    v.                                      :
                                            :
THE ESTATE OF IRVING GOULD, MEHDI           :
ALI, ALEXANDER M. HAIG, JR., THE            :
ESTATE OF RALPH SELIGMAN, BURTON            :
WINBERG and J. EDWARD GOFF,                 :
                                            :
                Defendants.         :
------------------------------------------------------------x
                                            :
THE ESTATE OF IRVING GOULD, MEHDI           :
ALI, ALEXANDER M. HAIG, JR., THE            :
ESTATE OF RALPH SELIGMAN, BURTON            :
WINBERG and J. EDWARD GOFF,                 :
                                            :
                Third-Party Plaintiffs, :
                                            :
    v.                                      :
                                            :
CHARTIS INSURANCE COMPANY OF                :
CANADA (f/k/a American Home Assurance       :
Company (Canada Branch)) and TRAVELERS      :
CASUALTY AND SURETY COMPANY (f/k/a          :
The Aetna Casualty and Surety Company),     :
                                            :
                Third-Party Defendants. :
                                            :
------------------------------------------------------------x

**THIRD PARTY DEFENDANT TRAVELERS CASUALTY
AND SURETY COMPANY'S (f/k/a THE AETNA
CASUALTY AND SURETY COMPANY) REPLY MEMORADUM OF LAW IN
<u>FURTHER SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

      Travelers Casualty and Surety Company's (f/k/a the Aetna Casualty and Surety

Company) ("Travelers") respectfully submits this reply memorandum of law in further support

of its motion for judgment on the pleadings, pursuant to Fed. R. Civ. P 12(c). Travelers hereby joins in and incorporates by reference, as if fully set forth herein, Federal Insurance Company's Reply Memorandum of Law in Further Support of its Motion for Judgment on the Pleadings [ECF No. 61] ("Federal's Reply").[1]

### PRELIMINARY STATEMENT

At the pre-motion conference it appeared that this litigation involved two issues. The first of those issues was whether the excess policies issued by Travelers, Federal and American Home (collectively, the "Excess Policies") "drop down" to provide coverage to the D&O Defendants in place of the coverage provided by the Liquidating Carriers (The Home and Reliance), even though the D&O Defendants' loss has not reached the Excess Policies' respective attachment points. While a separate argument can and is made as to the American Home policy, through the course of this briefing Defendants have effectively conceded that the Travelers and Federal Policies do not drop down. From Travelers' prospective, that means that Travelers cannot be asked to respond to any loss until the total loss reaches $40 million.

The second issue, and the one actively contested in these motions, is whether the failure of The Home and Reliance polices to be exhausted by "the payment of loss thereunder" constitutes the failure to meet a condition precedent to any liability attaching under the Travelers and Federal Policies. The D&O Defendants assert that the condition precedent to liability is met once loss exceeds the total limits of liability of the underlying policies, in the case of Travelers, $40 million. According to their argument, the Travelers Policy can be required to pay the portion of the loss over $40 million, even though there is no payment by The Home and Reliance

---

[1] Unless otherwise noted, capitalized terms have the same meaning as set forth in Travelers' Motion for Judgment on the Pleadings ("Travelers' Rule 12(c) Motion"). [ECF Nos. 41-43].

2

of their limits (*i.e.,* no exhaustion) and even though no one "in-fills," *i.e.,* pays the loss that otherwise would have been paid by The Home and Reliance but for their insolvencies. But as explained in the prior briefs and in the Federal Reply, such a reading would eviscerate the plain meaning of the Travelers Policy's mandate that exhaustion of the underlying coverage occur as a result of "actual payment of losses thereunder" and, thus, is unsupportable.

## ARGUMENT

I.   The D&O Defendants Have Abandoned Their Argument that the
     Travelers Policy "Drops Down"

As noted, the D&O Defendants appear to have abandoned their opposition and argument that the Travelers and Federal Policies must "drop down" to provide coverage below their respective attachment points. Even had they not done so, any assertion that the Travelers Policy drops down is groundless for the reasons stated in the prior briefing and the Federal Reply. *See also*, *M.A.G. Enterprises, Inc. v. National Union Fire Ins. Co.*, No. 3835 Aug. Term 2002, 2005 WL 503053, at *3 (Pa. Com. Pl. Feb. 16, 2005); *General Refractories Cos. v. Allstate Ins. Co.*, No. Civ. A.89-7924, 1994 WL 246375, at *7 (E.D. Pa. June 8, 1994).

The D&O Defendants, nonetheless, make a half-hearted and desperate attempt to create ambiguity in the Travelers Policy where there is none. They claim that the "Other Insurance" provision of the primary policy creates an ambiguity as to whether the Travelers Policy is only excess to "valid and collectable" insurance. Opp'n. Br. [ECF No. 57] at p. 19. As explained in the Federal Reply, that argument is wholly without merit. The Other Insurance clause plainly has nothing to do with the issue of whether the Travelers Policy is excess to the other parts of the insurance tower.

II.     The Travelers Policy Cannot Be Triggered Until the Underlying
        Policies Have Been Exhausted by Actual Payment

As set forth in Travelers' and Federal's Opposition to the D&O Defendants' Motion for Partial Summary Judgment [ECF. Nos. 54-56, 59], the plain language of the Travelers Policy establishes the following conditions for coverage: (1) the D&O Defendants' defense costs and/or liability reach $40 million; **_and_** (2) the underlying insurance has been exhausted "solely as the result of actual payment of losses thereunder by the applicable insurers."

Obviously, at this point, everyone agrees that the losses under the insurance program have, to date, not come close to reaching $40 million.  But even assuming, *arguendo*, that losses may or even will reach $40 million, the question becomes what does the explicit and clear requirement that the underlying coverage be exhausted "solely as the result of actual payment of losses thereunder" require.

Three possibilities have been posited in the course of the briefing.

1.     The D&O Defendants assert it means nothing.  They claim that regardless of whether there has been any "actual payment" of any money by anyone in losses below the $40 million attachment point, the Travelers Policy is triggered for losses above the $40 million level.  Such an interpretation would afford the exhaustion requirement and the "actual payment of losses thereunder" provision no meaning whatsoever and, as a matter of basic contract interpretation, cannot be sustained.  *See, e.g., Toffler Associates, Inc. v. Hartford Fire Ins. Co.*, 651 F. Supp. 2d 332, 344 n.3 (E.D. Pa. 2009) ("[t]he Court must avoid interpreting the Policy in a way that makes any term meaningless or superfluous"); *see M.A.G. Enterprises, Inc.*, 2005 WL 503053, at *3; *General Refractories*, 1994 WL 246375, at *7; *see also* Federal's Opp'n to Defs.' Mot. for Partial Summ. J. [ECF No. 55] at pp. 13-22.

2.      The second interpretation is that *the underlying insurers* (*i.e.*, Reliance and The Home) must, as a precondition to coverage under the Travelers Policy, *actually* pay out their limits.  As explained in full in the prior briefing and the Federal Reply, this interpretation fully comports with the language of the policies and applicable Pennsylvania law.

With respect to this second possible interpretation, the D&Os make two assertions.  First, they say that requiring actual payment by the underlying insurers is inconsistent with the Maintenance of Underlying Insurance provision, which states that the failure to maintain the underlying policies "shall not invalidate this policy but the Company shall not be liable to a greater extent than if the condition had been complied with."  Opp'n. Br. [ECF No. 57] at p. 17 (quoting Sandnes Dec.[2] Ex. 1at III).  That argument is a red herring.  No one is asserting that Commodore failed to maintain the Home and Reliance policies.  It did.  Rather, those policies are simply not fully performing.  Thus, that provision is irrelevant here because it merely defines what would have happened had Commodore not maintained those policies.  The relevant provision when, as was the case here, the underlying policies were maintained, is the depletion and exhaustion requirements, requiring actual payment of losses by those insurers.

The D&O Defendants' second argument hinges on the slight differences in the wording of the Travelers Policy when referring to "depletion" of the underlying insurance as opposed to its "exhaustion."  Their argument is based on the following provision of the Travelers Policy:

> In the event of the depletion of the limit(s) of liability of the Underlying Insurance solely as the result of ***actual payment of losses thereunder by the applicable insurers***, this Policy shall,  . . . , continue to apply to losses as excess insurance over the amount of insurance remaining under such Underlying Insurance.  In the event of the exhaustion of all of the limit(s) of liability of such Underlying

---

[2] "Sandnes Decl." refers to the December 15, 2010 Declaration of James Sandnes, submitted in support of Travelers' Rule 12(c) Motion [ECF No. 42].

>Insurance *solely as a result of payment of losses thereunder*, the remaining limits available under this Policy shall, . . . , continue for subsequent losses as primary insurance . . . .

Sandnes Dec. Ex. 1 at IV (emphasis added).

According to the D&O Defendants' argument, the fact that the words "by the applicable insurers" with respect to depletion is not repeated a second time in the section, when referring to exhaustion, somehow creates ambiguity as to whether there needs to by *any* payment whatsoever by the insurers on the underlying policies (The Home and Reliance). Giving the paragraph its plain and ordinary meaning, it is clear that with respect to both depletion and exhaustion the "payment of losses thereunder" must be as a result of "actual" payment and must be "by the applicable insurers." To read it otherwise would require a contortion that is not permitted in policy construction. *See, e.g., Brosovic v. Nationwide Mut. Ins. Co.*, 841 A.2d 1071, 1073 (Pa. Super. 2004) (explaining that "courts should try to read policy provisions to avoid ambiguities, if possible, and not torture language to create them") (citation omitted)

Taken to its logical extreme, under the D&O Defendants' theory, a loss of $39,999,999 would require that the underlying insurance necessarily be depleted by *actual payment of losses thereunder by the applicable insurers*. But when the last $1 in underlying insurance is paid, the requirement of depletion by *actual payment of losses thereunder by the applicable insurers*, somehow disappears because the policy is now exhausted. That cannot be. Depletion is merely a whistle stop on the way to exhaustion. The requirements related to depletion necessarily must also apply to exhaustion. The fact that the policy drafters did not bother with redundant repetition of the words "actual" and "by the applicable insurers" in the second sentence of the provision does nothing to undercut the requirement that the exhaustion, not just the depletion of the underlying insurance, be as a result of *actual payment of losses thereunder by the applicable*

*insurers*.  See *General Refractories Co. v. Allstate Ins. Co.*, 1994 WL 246375, at *4 (explaining that the insured "must establish that it has exhausted the limits of . . . the primary policies . . . before this Court can hold that *each* of the excess policies have been 'triggered'.) (emphasis in original); 17A *Couch on Insurance 3d* § 254:11, 254:12 (Lee R. Russ et al. eds., 2005) (the insured bears the burden of proving "compliance with policy conditions,").

Given that there has not (and apparently will not be) such exhaustion, the condition precedent to Travelers' liability under the Travelers Policy has not been met.

3.      The third and final possible interpretation of the Travelers Policy's exhaustion requirement is one that Travelers merely raised, in its prior briefing, in the alternative.  As explained in the summary judgment briefing, Travelers believes that at the very least, the Travelers Policy must be interpreted to require that the D&O Defendants themselves – or somebody – must fill the gap created by the insolvent carriers, before any liability can attach under the Travelers Policy.[3]

As just explained, Travelers believes that the language requiring "payment of losses thereunder by the applicable insurers" applies to exhaustion as well as depletion.  But even accepting the D&O Defendants' reading, at the very least the exhaustion sentence of the policy expressly requires that exhaustion result from the "***payment of losses thereunder.***"  If that

---

[3] The D&O Defendants appear to argue that the discussion of this third possible interpretation is somehow an acknowledgment that actual payment by the underlying carriers is not a condition precedent to coverage under the Travelers Policy.  Opp'n. Br. [ECF No. 57] at p. 18.  That is not correct.  It is simply an alternative argument in the event that the Court disagrees with the principal argument regarding exhaustion, laid out in the Federal briefs and incorporated into the Travelers' motion papers.

7

payment is not by the "applicable insurers thereunder," then it must be by someone, presumably the D&O Defendants themselves. To hold otherwise would, as noted above, require the Court to completely read the "payment of losses thereunder" language out of the policy, something it may not do. *See, e.g., Toffler Associates, Inc.*, 651 F. Supp. 2d at 344 n.3 ("[t]he Court must avoid interpreting the Policy in a way that makes any term meaningless or superfluous")

Moreover, the D&O Defendants' argument about Maintenance of Underlying Insurance clause (even if otherwise relevant) is, likewise, easily harmonized with such an interpretation because the requirement of in-fill is wholly consistent with the policy performing in the same manner as it would had the underlying insurance been maintained.

Travelers started its briefing in this matter by pointing out that whether or not the policy is excess of underlying coverage is fundamental to the risk/reward analysis involved in underwriting an insurance policy. As noted, the existence of underlying coverage layers not only affects the point at which coverage will attach, underlying layers also give the excess insurers comfort that others (normally the underlying carriers) will have the economic incentive to examine and adjust the claim in a careful and reasonable way, monitoring defense counsel and settling the claim within the lower policy layers if reasonably possible.

Reading the Travelers Policy as the D&O Defendants would have the Court do, not only would ignore the plain words of the policy requiring actual payment of losses, and ignore the law extensively briefed by Federal, it would also improperly change the economic bargain. To not even require in-fill, would allow the D&O Defendants to enter into settlements that they have no intention of funding, while still triggering liability by high excess insurers such as Travelers. It is precisely the threat of such an outcome that the D&O Defendants seek, so they can use that

threat as bludgeon to force the insurers to do that which even the D&O Defendants concede is *not* required – drop down and pay loss below their contractual attachment points.

## CONCLUSION

For all of the reasons set forth above and in Federal's Reply, the Court should declare that Travelers has no obligation to drop down to provide coverage to the D&O Defendants. It should hold that under the Travelers Policy, Travelers is only required (subject to other policy terms and conditions) to respond once the Home and Reliance have actually paid out their limits. In the alternative, it should hold that under the Travelers Policy, Travelers is only required (subject to other policy terms and conditions) to respond once the D&O Defendants (or someone on their behalf) actually makes payments of Loss (as defined in the policy) equal to $40 million. And the Court should grant such other further relief that the Court deems just and proper.

Dated:      New York, New York
            February 16, 2010

*Of counsel:*

  Tammy Yuen

BOUNDAS, SKARZINSKI, WALSH &
  BLACK LLC

By:  _____/s James Sandnes_____
            James Sandnes (JS-8944)

One Battery Park Plaza
New York, New York 10004
(212) 820-7700
jsandnes@bswb.com

*Attorneys for Third-Party Defendant Travelers
  Casualty and Surety Company*

4832-8157-6456, v.  2

9