UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FEDERAL INSURANCE COMPANY,

                            Plaintiff,

            - against -

THE ESTATE OF IRVING GOULD, MEHDI
ALI, ALEXANDER M. HAIG, JR., THE
ESTATE OF RALPH SELIGMAN, BURTON
WINBERG AND J. EDWARD GOFF,

                            Defendants.

THE ESTATE OF IRVING GOULD, MEHDI
ALI, THE ESTATE OF ALEXANDER M.
HAIG, JR.,THE ESTATE OF RALPH
SELIGMAN, BURTON WINBERG AND
J. EDWARD GOFF,

                            Third-Party Plaintiffs,

            - against -

CHARTIS INSURANCE COMPANY OF
CANADA (f/k/a AMERICAN HOME
ASSURANCE COMPANY (CANADA
BRANCH)) AND AETNA CASUALTY AND
SURETY COMPANY

                            Third-Party Defendants.

No. 10 Civ. 1160 (RJS)

**DEFENDANTS' REPLY
MEMORANDUM OF LAW IN
FURTHER SUPPORT OF
DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT
AS TO PLAINTIFF FEDERAL
INSURANCE COMPANY AND
THIRD-PARTY DEFENDANT
AETNA CASUALTY AND SURETY
COMPANY**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................ 1

I.      The Excess Insurers' "Ripeness" Argument Has No Merit................................................ 2

II.     The Excess Policies Are Triggered When Defendants' Liability Reaches
The Excess Insurers' Respective Policy Limits.................................................................. 6

      A.     Defendants Are Entitled to Judgment Even if Pennsylvania Law
Applies ................................................................................................................. 7

      B.     Zeig Remains Good Law and Controlling Precedent in This Circuit..................... 9

CONCLUSION.................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

Associated Indem. Corp. v. Fairchild Indus., Inc.,
   961 F.2d 32 (2d Cir. 1992) ..................................................................4

Bluestein & Sander v. Chicago Ins. Co.,
   No. 99 CIV. 11519, 2001 WL 167707 (S.D.N.Y. Feb. 20, 2001)......................................5

Citigroup, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA, et al.,
   Civil Action No. H-06-3666, 2010 WL 2179710 (S.D. Tex. May 28, 2010) .....................9

E.R. Squibb & Sons, Inc. v. Lloyd's & Co.,
   241 F.3d 154 (2d Cir. 2001) ................................................................4

General Refractories Co. v. Allstate Ins. Co.,
   No. Civ. A. 89- 7924,1994 WL 246375 (E.D. Pa. 1994) ................................7, 8

HLTH Corp. v. Agricultural Excess and Surplus Ins. Co.,
   C.A. No. 07C-09-102, 2008 WL 3413327 (Sup. Ct. Del. July 31, 2008) .....................8, 10

J. Kinderman & Sons, Inc. v. United Nat'l Ins. Co.,
   406 Pa. Super. 37, 593 A.2d 857 (Pa. Super. Ct. 1991) ....................................8

Koppers Co. v. Aetna Cas. & Sur. Co.,
   98 F.3d 1440 (3d Cir. 1996) ................................................................9

M.A.G. Enterprises, Inc. v. National Union Fire Ins. Co.,
   No. 3855 Aug. Term 2002, 2005 WL 503053 (Pa. Comm. Pl. Feb. 16, 2005)...................8

Massachusetts Bonding and Ins. Co. v. Car & Gen. Ins. Corp.,
   152 F. Supp. 477 (E.D. Pa. 1957).........................................................6

Occidental Fire & Cas. Co. of North Carolina v. Brocious,
   772 F.2d 47 (3d Cir. 1985) ................................................................8

Olin Corp. v. Consol. Aluminum Corp.,
   5 F.3d 10 (2d Cir. 1993) ..................................................................4

Park Place Entertainment Corp. v. Transcontinental Ins. Co.,
   No. 01 Civ. 6546, 2003 WL 1913709 (S.D.N.Y. April 18, 2003) .........................6

Pereira v. National Union Fire Ins. Co.,
   No. 04 Civ. 1134, 2006 WL 1982789 (S.D.N.Y. July 12, 2006) .........................10

## TABLE OF AUTHORITIES

**Page(s)**

In re Prudential Lines Inc.,
    158 F.3d 65 (2d Cir. 1998) ........................................................................................ 3, 4

Rosen v. Mega Bloks, Inc.,
    No. 06 Civ. 3473, 2009 WL 929474 (S.D.N.Y. Apr. 7, 2009) ........................................ 4

Rummel v. Lexington Ins. Co.,
    123 N.M. 752 (N.M. 1997) ........................................................................................... 10

SR Int'l Business Ins. Co., Ltd. v. Allianz Ins. Co.,
    343 F.App'x 629 (2d Cir. 2009) .................................................................................. 1, 2

Tocci Building Corp. of New Jersey, Inc. v. Virginia Sur. Co.,
    Civil Action No. 08-11402, 2010 WL 4340656 (D. Mass. Nov. 2, 2010) ......................... 4

Twin City Fire Ins. Co. v. Innovative Aftermarket Systems, L.P.,
    597 F. Supp. 2d 295 (D. Conn. 2009) ............................................................................. 5

U.S. Fire Ins. Co. v. Am. Nat'l Fire Ins. Co.,
    No. 3986 Feb. Term  2000, 2002 WL 1758336 (Pa. Comm. Pl. July 8, 2002) .................. 8

Zeig v. Massachusetts Bonding & Ins. Co.,
    23 F.2d 665 (2d Cir. 1928) ..................................................................................*passim*

Defendants'[1] respectfully submit their reply memorandum of law in further support of their motion for partial summary judgment against Federal and Travelers (the "Excess Insurers").

## PRELIMINARY STATEMENT

The Excess Insurers make two arguments in opposition to Defendants' Motion: (1) that the Motion purportedly is not ripe for adjudication; and (2) that Pennsylvania law applies, purportedly holding that an excess insurance company has no obligation ever to provide the purchased coverage when an underlying insurer is insolvent, even when a policyholder's defense costs and/or liability exceeds the limits of that underlying insolvent insurance. Neither argument has any merit.[2]

The Second Circuit has made clear that declaratory relief in "litigation over insurance coverage has become the paradigm for asserting jurisdiction despite future contingencies that will determine whether a controversy ever actually becomes real" and that such a declaration clarifies the rights of the parties and assists a party in "formulating settlement positions and developing settlement strategy." SR Int'l Business Ins. Co., Ltd. v. Allianz Ins. Co., 343 F.App'x.629, 632 (2d Cir. 2009). Here, after unequivocally taking the position that because of the insolvency of an underlying insurer no coverage can ever exist under their respective policies for either defense costs or indemnity incurred in a pending action that seeks $100 million in damages and will go to trial this year, the Excess Insurers argue that the issue is "speculative, distant and imagined" and that the issue is unripe because "no judgment or settlement demand exists", despite the fact that Defendants would only have to incur an additional $5 million in defense costs and potential settlement or judgments to reach the first of the Excess Insurers

---

[1] Defined terms have the same meaning as set forth in Defendants' opening memorandum of law [Doc. 47] ("Defendants' Opening Brief").

[2] Defendants submit separately their reply memorandum of law in further support of their motion for partial summary judgment as to Third-Party Defendant Chartis.

policies. (Federal Memorandum in Opposition [Doc. 55] ("Federal Opp."), at pp. 7-8). Thus, under the Excess Insurers' argument, where an insurance company takes the position that insurance coverage does not exist for a currently pending lawsuit, a policyholder's declaratory relief action with respect to that position purportedly is not ripe until <u>after</u> a judgment or settlement is demanded in that action, leaving the policyholder to litigate an underlying action potentially through its conclusion without knowing whether the liability insurance will provide any coverage for defense costs or a potential settlement or judgment that may reach the insurers' policy attachment points. That argument is unsupported by law and contrary to the very purpose for which defense and indemnity insurance is purchased – to provide a defense and certainty against risk.

New York law (which applies here) also is clear that an excess insurance company cannot escape its coverage obligations where the total amount of the policyholder's defense or indemnity obligations exceed any underlying insurance policies' limits of liability, regardless of whether such amounts have been paid by underlying insurers or the policyholder, and Pennsylvania law is no different. Accordingly, as set forth further below, the Court should grant Defendants' Motion.

## I.    THE EXCESS INSURERS' "RIPENESS" ARGUMENT HAS NO MERIT

Declaratory relief in "litigation over insurance coverage has become the paradigm for asserting jurisdiction despite future contingencies that will determine whether a controversy ever actually becomes real" and such a declaration clarifies the rights of the parties and assists a party in "formulating settlement positions and developing settlement strategy." <u>SR Int'l Business Ins. Co.</u>, 343 F.App'x at 632. In considering whether the controversy lacks "sufficient immediacy and reality" to warrant declaratory relief, a court must focus on whether "the contingent event

upon which the controversy rests is **unlikely to occur**." In re Prudential Lines Inc., 158 F.3d 65, 70 (2d Cir. 1998) (emphasis added).[3]

Despite the Excess Insurers' assertions to the contrary, the Bahamas Action does not involve claims that are "speculative, distant and imagined". (Federal Opposition, p.7). The Bahamas Action commenced in 1998. Wong Dec., ¶ 5. Defendants long ago requested coverage under Commodore's policies for the claims asserted in that litigation. Defense costs in the Bahamas Litigation and related litigations have reached $14 million and continue to be incurred. Id., ¶ 6. Both fact and expert discovery was completed in September 2010 and the trial of the action will commence this year, an action in which the plaintiffs seek in excess of $100 million in damages. Id. ¶ 7. Moreover, "[a]s trial for the Bahamas Litigation nears, the potential for settlement will be explored as part of dialogue with counsel for the Liquidators that has already been initiated" and "the availability of insurance coverage is of critical importance in informing the directors as they proceed to trial or settlement negotiations." Id. Thus, whether insurance coverage exists for an action scheduled to go to trial in the next 10 months seeking damages of more than two times the amount of the Excess Insurers' policy limits plainly is ripe for adjudication and the dispute is not based on a contingency that is "unlikely to occur."[4] In re

---

[3] The Excess Insurers appear, in fact, to have conceded in both their pleadings and in the motions pending before this Court that a ruling on at least a portion of their policy obligations – the duty to advance defense costs – is ripe for adjudication by this Court. Indeed, Federal's Complaint alleges an actual controversy relating to the parties' respective rights and obligations under the Federal Excess Policies. See Hertzog Dec., Ex. 1, at 58.

[4] For Federal to insist that the issue of coverage under its third level excess policy, which attaches after $15 million in underlying limits, is "speculative" and "distant" particularly exemplifies why the Excess Insurers' arguments have no merit. To reach the third level Federal excess policy only would require $5 million (the policy limit of the second level insolvent excess policy) in additional defense costs, settlement or judgment amounts in the Bahamas Action. It is difficult to imagine a riper issue for adjudication than the issue of coverage under an excess policy which will be triggered when an additional $5 million is incurred in an action going to

Prudential Lines Inc., 158 F.3d at 70; see also Tocci Building Corp. of New Jersey, Inc. v.

Virginia Sur. Co., No. 08-11402-DPW, 2010 WL 4340656 (D. Mass. Nov. 2, 2010) (denying

motion to dismiss and holding that policyholder's action was ripe for adjudication where the

damages claimed exceeded the limits of the primary layer of insurance and reached into the

excess layer).

      The Excess Insurers' citations only underscore the appropriateness of Defendants' claim

for declaratory relief as those cases demonstrate precisely the "hypothetical" and "speculative"

matters that the prohibition on advisory opinions is meant to address.  In Olin Corp. v. Consol.

Aluminum Corp., 5 F.3d 10 (2d Cir. 1993), the Second Circuit's holding was expressly based on

the facts that there were no pending claims for the additional third-party sites and no specific

third-party site was even mentioned in the record.  The court found that presently unknown sites

for which Olin someday may face environmental liability was simply not a question of sufficient

immediacy for the court to address.  Id. at 17.  Further, in E.R. Squibb & Sons, Inc. v. Lloyd's &

Cos., 241 F.3d 154, 177 (2d Cir. 2001), the Second Circuit affirmed the district court which

repeatedly denied the high-level excess insurers' various motions arguing that there was no case

or controversy with respect to their policy obligations on the ground that coverage may never be

reached and that the primary policy was not yet fully exhausted.  Id. at 176-78.

      The Excess Insurers also fail to distinguish Defendants' cases in any meaningful way.  In

Rosen v. Mega Bloks, Inc., No. 06 Civ. 3473, 2009 WL 929474 (S.D.N.Y. Apr. 7, 2009), the

court held that relief regarding future cases was not ripe as there was "no showing as to what

parties may be bringing such suits, whether such cases will ever get filed, or why relief as to

future obligations is necessary now."  See also Associated Indem. Corp. v. Fairchild Indus., Inc.,

---

trial this year involving $100 million in potential damages and in which a settlement dialogue
already has been initiated.

961 F.2d 32, 35 (2d Cir. 1992) (reversing imposition of sanctions on policyholder seeking declaratory relief as an abuse of discretion where the policyholder reasonably believed that the excess insurer's $25 million attachment point could be reached even where final liability was uncertain, given the $15 million estimated cost provided by the EPA, inflation and a margin of error); Twin City Fire Ins. Co. v. Innovative Aftermarket Sys., L.P., 597 F. Supp. 2d 295, 299-300 (D. Conn. 2009) (finding matter unripe as "purely conjectural" because the plaintiff agreed that "the underlying action does not trigger any policies of insurance issued" and would not absent the contingency of additional plaintiffs or class member certification). Furthermore, Defendants' citation to Bluestein & Sander v. Chicago Ins. Co., No. 99 CIV. 11519, 2001 WL 167707 (S.D.N.Y. Feb. 20, 2001), merely highlights that declaratory relief relating to an insurance company's indemnity obligations – even where an underlying action has not been reduced to judgment – is so commonly accepted that a court need not consider the issue of justiciability. Id. at *2.

The Excess Insurers' assertion, without any legal support, that somehow Defendants' claim necessarily is not ripe because there has been no settlement demand, no request for a coverage of a settlement and that the Excess Insurers' "consent would be required for any settlement to be potentially covered under the Policy" has no merit. (Federal Opp., p. 5). If the rule (for which the Excess Insurers cite no case law) were that a policyholder cannot seek a declaratory relief regarding coverage absent an actual settlement demand, then policyholders would be placed in the untenable position of being forced to accept or reject settle demands before knowing whether insurance coverage in fact exists for that settlement. Likewise, the Excess Insurers' "consent to settle" theory also is nonsensical – where an insurer denies all liability (here on the basis that their policies can never be triggered by any settlement), it is well

settled that a policyholder is free to enter into any reasonable settlement without the insurer's consent. Park Place Entertainment Corp. v. Transcontinental Ins. Co., No. 01 Civ. 6546 2003 WL 1913709, at *7 (S.D.N.Y. April 18, 2003); Massachusetts Bonding and Ins. Co. v. Car & Gen. Ins. Corp. 152 F.Supp. 477, 480 (E.D. Pa. 1957).

Similarly, the Excess Insurers' contention that adjudication of Defendants' right to coverage under the policies somehow would prejudice the Excess Insurers by encouraging an "unreasonable settlement" of the Bahamas Action also has no merit. (Federal Opp. at p. 6.). A court ruling in Defendants' favor on the Zeig issue in no way prevents the Excess Insurers from challenging coverage for any eventual settlement on the grounds that it is unreasonable. Indeed, as discussed above, Defendants' are just as free now to enter into any reasonable settlement as they would be if the Court ruled in their favor on the Zeig issue and the Excess Insurers would plainly be entitled to challenge the reasonableness of any settlement.[5]

Accordingly, as set forth above, Defendants' Motion is ripe for adjudication and the Excess Insurers have failed to articulate any legitimate reason or offer any on point case law demonstrating otherwise.

## II. THE EXCESS POLICIES ARE TRIGGERED WHEN DEFENDANTS' LIABILITY REACHES THE EXCESS INSURERS' RESPECTIVE POLICY LIMITS

Defendants' Motion seeks a declaration regarding the Excess Insurers' obligation to provide coverage once Defendants' costs or liabilities reach the excess policies' attachment points and that proper exhaustion does not require that the underlying policies be exhausted by underlying insurers "payment of claims" in order to trigger coverage under the excess policies. The Excess Insurers fail to present any controlling case law supporting a contrary conclusion on

---

[5] Neither Federal nor Travelers has asserted any other ground exists currently for denial of coverage for the Bahamas Action.

the exhaustion issue and cite only to inapposite case law that concerns drop-down issues, not exhaustion.[6] In fact, all relevant case law – whether in New York or Pennsylvania - supports Defendants' application of the rationale underlying <u>Zeig</u> and its progeny. With respect to the <u>Zeig</u> exhaustion issue, the Excess Insurers are asked to pay only towards Defendants' claim what they agreed to when the policies were sold and the insolvency of any underlying insurers does not in any way increase their liability or change the risk bargained for. The Excess Insurers have failed to distinguish their position and offer no explanation as to how they are prejudiced or disadvantaged by being asked to provide coverage for a valid claim that reaches their policies' attachment points.

### A.   Defendants Are Entitled to Judgment Even if Pennsylvania Law Applies

As discussed in their opening memorandum and their memorandum in opposition to the Excess Insurers' Rule 12(C) motion, Defendants dispute that Pennsylvania law applies to this matter. Even if it did, however, the Court need not engage in any choice-of-law analysis as the Excess Insurers have failed to show that a conflict exists between New York and Pennsylvania law on the issue of exhaustion.

First, the Pennsylvania cases cited in the Federal Opp. do not preclude Defendants from obtaining excess coverage where the underlying insurance has not been exhausted by payment of claims. The Excess Insurers cite <u>General Refractories Co. v. Allstate Ins. Co.</u>, No. Civ. A. 89-7924, 1994 WL 246375 (E.D. Pa. 1994) for the proposition that Pennsylvania courts hold that exhaustion of underlying coverage is a "condition precedent" to coverage. Federal Opp. at 14. The case contains no discussion of what circumstances will be found to constitute exhaustion,

---

[6] Defendants respectfully refer the Court to their memorandum of law in opposition to the Excess Insurers' Rule 12(c) motion and incorporate by reference the arguments therein regarding the Excess Insurers' conflation of the "drop-down" and "exhaustion" issues. <u>See</u> Doc. 57.

which is the crux of the issue here. The <u>General Refractories</u> court found that summary judgment was inappropriate because the moving party failed to present any evidence regarding what policies were in effect for the indemnity payments that were made and thus exhaustion could not be shown. <u>Id.</u> at *4. Here, it is undisputed that the Primary Policy has been exhausted and that The Home and Reliance are insolvent and unable to pay to their policy limits. In <u>J. Kinderman & Sons, Inc. v. United Nat'l Ins. Co.</u>, 593 A.2d 857 (Pa. Super. Ct. 1991), the court found that United was not obligated to provide drop-down coverage under the terms of its policy due to the insolvency of Ambassador (which is not at issue in this Motion) and the end of the paragraph quoted by the Excess Insurers expressly endorses Defendants' argument here: "We hold that United's coverage for products liability claims is for such liability as exceeds $1,000,000." <u>Id.</u> at 860. The remaining cases cited in the Federal Opp. also fail to support the Excess Insurers' argument. <u>See, e.g.</u>, <u>Occidental Fire & Cas. Co. of North Carolina v. Brocious</u>, 772 F.2d 47 (3d Cir. 1985) (addressing allocation and pro rata issues relating to relationship of several policies covering vehicles and drivers); <u>U.S. Fire Ins. Co. v. Am. Nat'l Fire Ins. Co.</u>, No. 3986 Feb. Term 2000, 2002 WL 1758336 (Pa. Comm. Pl. July 8, 2002) (addressing subrogation and finding no evidence of exhaustion to trigger coverage under excess policy where disputed trigger was payment by solvent primary carrier, without any apparent justification, of $1 million in excess of its policy limits).[7]

The Excess Insurers further fail in their attempt to distinguish Defendants' Pennsylvania cases. The court in <u>M.A.G. Enterprises, Inc. v. National Union Fire Ins. Co.</u>, No. 3855 Aug.

---

[7] While <u>HLTH Corp. v. Agricultural Excess and Surplus Ins. Co.</u>, C.A. No. 07C-09-102, 2008 WL 3413327 (Sup. Ct. Del. July 31, 2008) is cited as an example of how a policy could be drafted to provide coverage despite an underlying insolvency, in that case the primary insurers were not insolvent but settled with the policyholder for less than their policy limits, and the court expressly embraced the rationale of <u>Zeig</u> that the insurers' "liability is completely unchanged whether Plaintiffs have received all of the underlying payments or not." <u>Id.</u> at *15.

Term 2002, 2005 WL 503053 (Pa. Comm. Pl. Feb. 16, 2005) acknowledged that coverage is triggered where liability reaches the excess policy when it stated that "[the excess insurer] can only be held responsible when the damages are in excess of $1 million" and only held that the excess policy had no obligation to drop down "below the $1 million Retained Limit." Id. at *4 (emphasis added). Likewise, the Excess Insurers' attempt to distinguish Koppers on the basis that it involved a settlement with the primary insurer rather than an insolvency also fails as there is no reason why the rationale employed to a settlement should not apply to an insolvency. See Koppers Co. v. Aetna Cas. & Sur. Co., 98 F.3d 1440, 1454 (3d Cir. 1996).[8]

B.    Zeig Remains Good Law and Controlling Precedent in This Circuit

The Excess Insurers misconstrue both the holding and rationale of Zeig v. Massachusetts Bonding & Ins. Co., 23 F.2d 665 (2d Cir. 1928). The Excess Insurers point to their policy language requiring exhaustion "by payment of claims" as indicating a condition precedent to liability that was somehow not at issue in Zeig, but that is almost identical to the language at issue in Zeig, where the policy provided that it "shall apply and cover only after all other insurance herein referred to shall have been exhausted in the payment of claims." Id. at 665. Justice Hand clearly held that such language did not preclude liability under the excess policies at issue.[9]  Further, there is no basis for asserting that Zeig is limited to first-party policies. In

---

[8] The Excess Insurers' reliance on Citigroup, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA, et al., Civil Action No. H-06-3666, 2010 WL 2179710 (S.D. Tex. May 28, 2010) also has no merit. Unlike in Citigroup, Defendants do not seek to let any insurer "off the hook" and evade exhaustion of their policy limits nor to reserve coverage for future claims.

[9] Travelers also attempts to distinguish itself by pointing to a policy provision that requires "actual" payment by the "applicable insurers." Travelers Opp. at 7. That requirement is not present in the exhaustion clause but the depletion clause. Travelers' argument is thus misleading and unsupported by its own explicit policy language. For a more thorough discussion see Defendants' Opposition at pp. 17-18. This also renders Travelers point regarding whether Defendants will make "actual" payment to in-fill moot. Notably, Federal's depletion clause also requires "actual" payment and they rightly do not rely on this language.

fact, numerous courts have recognized the application of <u>Zeig</u> to third-party claims.  <u>See, e.g.</u>, <u>HLTH Corp. v. Agricultural Excess and Surplus Ins. Co.</u>, C.A. No. 07C-09-102, 2008 WL 3413327 (Sup. Ct. Del. July 31, 2008); <u>Rummel v. Lexington Ins. Co.</u>, 123 N.M. 752 (N.M. 1997).

The Excess Insurers similarly fail in their attempt to distinguish <u>Pereira</u>.  The reason for the widespread application of <u>Zeig</u> is that strict application of the exhaustion requirement works a hardship on policyholders who have already been deprived a layer of coverage by the insolvency.  <u>Pereira v. National Union Fire Ins. Co.</u>, No. 04 Civ. 1134, 2006 WL 1982789, at *7 (S.D.N.Y. July 12, 2006).  This hardship exists regardless of whether coverage is for first-party or third-party loss.  Moreover, the policy at issue in <u>Pereira</u> provides coverage "only after all Underlying Insurance has been exhausted by actual payment of claims or losses thereunder." <u>Id.</u> at *7. The language at issue in <u>Pereira</u> is arguably more restrictive than that in the Excess Policies as it specifies that <u>actual</u> payment of claims is required for exhaustion.

## CONCLUSION

For all of the foregoing reasons, and all of the reasons discussed in Defendants' opening memorandum, Defendants' motion for partial summary judgment should be granted.

ANDERSON KILL & OLICK, P.C.

February 16, 2011

By:   /s/ Rene F. Hertzog

Finley T. Harckham
Alex D. Hardiman
Rene F. Hertzog

1251 Avenue of the Americas
New York, NY  10020
Telephone:  212-278-1000
Facsimile: 212-278-1733

Attorneys for Defendants