UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FEDERAL INSURANCE COMPANY,

                    Plaintiff,

        - against -

THE ESTATE OF IRVING GOULD, MEHDI
ALI, ALEXANDER M. HAIG, JR., THE
ESTATE OF RALPH SELIGMAN, BURTON
WINBERG AND J. EDWARD GOFF,

                Defendants.

---

THE ESTATE OF IRVING GOULD, MEHDI
ALI, THE ESTATE OF ALEXANDER M.
HAIG, JR.,THE
ESTATE OF RALPH SELIGMAN, BURTON
WINBERG AND J. EDWARD GOFF,

        Third-Party Plaintiffs,

        - against -

CHARTIS INSURANCE COMPANY OF
CANADA (f/k/a AMERICAN HOME
ASSURANCE COMPANY (CANADA
BRANCH)) AND AETNA CASUALTY AND
SURETY COMPANTY

        Third-Party Defendants.

No. 10 Civ. 1160 (RJS)

**DEFENDANTS' REPLY
MEMORANDUM OF LAW IN
FURTHER SUPPORT OF
DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT
AGAINST THIRD-PARTY
DEFENDANT CHARTIS INSURANCE
COMPANY OF CANADA (f/k/a
AMERICAN HOME ASSURANCE
COMPANY (CANADA BRANCH))**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................... 1

I.     DEFENDANTS' MOTION IS RIPE FOR ADJUDICATION ........................................... 1

II.    CHARTIS HAS NOT RAISED A MATERIAL ISSUE OF FACT SO AS
       TO SURVIVE SUMMARY JUDGMENT ....................................................................... 3

III.   CHARTIS' OBLIGATION TO ADVANCE DEFENSE COSTS HAS
       BEEN TRIGGERED ...................................................................................................... 5

       A.     Defendants Have Met Their Burden of Showing at Least One
              Potentially Covered Claim .................................................................................. 5

       B.     The Prior Acts Exclusion Does Not Negate Chartis' Duty to
              Advance Defense Costs ....................................................................................... 6

IV.    CHARTIS CANNOT REFUTE ITS OBLIGATION TO PROVIDE
       COVERAGE ONCE DEFENDANTS' LIABILITY REACHES ITS
       LIABILITY THRESHOLD .............................................................................................. 7

V.     CHARTIS HAS FAILED TO SHOW THAT ITS POLICY IS NOT
       REQUIRED TO DROP-DOWN ..................................................................................... 8

CONCLUSION ................................................................................................................. 10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

<u>30 West 15th St. Owners Corp. v. Travelers Ins. Co.</u>,
563 N.Y.S.2d 784 (N.Y. App. Div. 1990)...........................................................................7

<u>Ambassador Assocs. v. Corcoran</u>,
541 N.Y.S.2d 507 (N.Y. Sup. Ct. 1989)..............................................................................8

<u>Ambassador Assocs. v. Corcoran</u>,
79 N.Y.2d 871 (N.Y. 1992)................................................................................................9

<u>American Lumbermens Mut. Cas. Co. v. Lumber Mut. Cas. Ins. Co.</u>,
295 N.Y.S. 321 (N.Y. App. Div. 1937).........................................................................4, 9

<u>Anderson v. Liberty Lobby, Inc.</u>,
477 U.S. 242 (1986) ..........................................................................................................3

<u>Employers Ins. of Wausau v. Fox Entm't Grp., Inc.</u>,
522 F.3d 271 (2d Cir. 2008) ..............................................................................................2

<u>Estrella v. P.R. Painting Corp.</u>,
No. 06-CV-717, 2008 WL 7826820 (E.D.N.Y. Sept. 16, 2008).......................................3

<u>Evans v. Consumer Information & Dispute Resolution</u>,
No. 05 Civ. 8252, 2006 WL 1209904 (S.D.N.Y. May 5, 2006) ........................................3

<u>Federal Ins. Co. v. Kozlowski</u>,
792 N.Y.S.2d 397 (N.Y. App Div. 2005)............................................................................5

<u>Fitzpatrick v. American Honda Motor Co., Inc.</u>,
78 N.Y.2d 61 (1991)..........................................................................................................6

<u>General Refractories Co. v. Allstate Ins. Co.</u>,
No. 89-7924, 1994 WL 246312 (E.D. Pa. June 8, 1994) .................................................4

<u>Gladstone v. D.W. Ritter Co.</u>,
508 N.Y.S.2d 880 (N.Y. Sup. Ct. 1986).............................................................................4

<u>Mossa v. Provident Life & Cas. Ins. Co.</u>,
36 F. Supp. 2d 524 (E.D.N.Y. 1999)................................................................................10

<u>Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.</u>,
472 F.3d 33 (2d Cir. 2006) ................................................................................................6

## TABLE OF AUTHORITIES

**Page(s)**

<u>Sacks & Sacks v. Home Ins. Co.</u>,
   604 N.Y.S.2d 56 (N.Y. App. Div. 1993)...........................................................................7

<u>Seaboard Sur. Co. v. Gillette Co.</u>,
   64 N.Y.2d 304 (N.Y. 1984)...............................................................................................6

<u>Zeig v. Massachusetts Bonding & Ins. Co.</u>,
   23 F.2d 665 (2d Cir. 1928) ............................................................................................7, 8

Defendants,[1] by and through their attorneys, respectfully submit this reply memorandum of law in further support of their motion for partial summary judgment regarding Chartis' coverage obligations for the Bahamas Litigation.[2]

### PRELIMINARY STATEMENT

Chartis argues against summary judgment on the grounds that the matter is not ripe for adjudication; that material factual disputes preclude this Court from granting summary judgment in favor of Defendants; that its exclusion for "prior acts" casts the Bahamas Complaint outside of the policy's coverage; and that the Chartis Policy cannot be read to require it to "drop-down" and fill in the gaps in coverage left by the insolvencies of Reliance and The Home.

As discussed below, Chartis' arguments have no merit.

### I.   DEFENDANTS' MOTION IS RIPE FOR ADJUDICATION

Chartis argues that this matter is not ripe for adjudication on the ground that Defendants have not shown that the excess policies will be triggered by Defendants' liabilities in the Bahamas Litigation. As Federal and Travelers also have contested that the matter is ripe and in order to avoid duplicative briefing, Defendants respectfully refer the Court to the Exhaustion Brief for Defendants' argument as it relates to the "ripeness" issue and expressly incorporates those arguments herein by reference. Defendants will address separately those additional points asserted in Chartis' memorandum of law in opposition to Defendants' Motion (the "Chartis Opp.").

First, Chartis argues that Defendants have provided no proof indicating an "<u>undisputable</u> <u>likelihood</u>" that the Chartis Policy will be triggered. Chartis Opp. at 11 (emphasis added). An

---

[1] Defined terms have the same meaning as set forth in Defendants' opening memorandum of law.

[2] Defendants submit separately their Memorandum of Law in Further Support of Their Motion for Partial Summary Judgment Regarding the Insurance Companies' Exhaustion Defenses, dated February 16, 2011, and filed contemporaneously herewith (the "Exhaustion Brief").

"undisputable likelihood" is not the standard to be applied. As set forth in Defendants' opening brief, this matter is properly before the Court as an actual case and controversy ripe for adjudication because there exists a reasonable or practical likelihood that the excess insurers' coverage obligations will be triggered by virtue of the growing amount of defense costs incurred in the Bahamas Litigation, as well as the potential for damages in the amount of $100 million. See, e.g., Employers Ins. of Wausau v. Fox Entm't Grp., Inc., 522 F.3d 271, 278 (2d Cir. 2008). Defendants are not required to guarantee or prove that such liability will be reached in order for this Court to consider the Motion.

Second, while Chartis further argues that its position in the Commodore insurance tower renders the likelihood of Defendants' liability reaching its limits even less likely and thus the issue is "less ripe" for Chartis, in doing so Chartis ignores two essential points of Defendants' argument. First, Chartis is not a part of Commodore's insurance tower but is a separate side policy that does not require the exhaustion of any underlying insurance before its coverage is triggered, it only requires exhaustion of any "valid and collectible" coverage. Second, should this Court find that Chartis is required to provide drop-down coverage to cover the insolvent insurers layers, Chartis cannot reasonably argue that the contingencies are so remote as to not reach its policy. In that scenario, Chartis' obligations would be triggered immediately, given that Defendants' defense costs have already reached $14 million. Similarly, there is no merit to the contention that ruling on the Defendants' motion as it relates to Chartis necessitates a subsequent ruling on the obligations of the other insurers. Defendants have moved with regard to each of its remaining solvent insurance companies and this Court may rule as to the obligations of each now, as a matter of law.

## II.   CHARTIS HAS NOT RAISED A MATERIAL ISSUE OF FACT SO AS TO SURVIVE SUMMARY JUDGMENT

A party disputing summary judgment must show that a material issue of fact is in dispute. A material fact is one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Estrella v. P.R. Painting Corp., No. 06-CV-717, 2008 WL 7826820 *6 (E.D.N.Y. Sept. 16, 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 155 (1986)).  Further, only disputed facts that may affect the outcome of the suit should preclude a grant of summary judgment. Anderson, 477 U.S. at 248.  The party opposing summary judgment must show more than some "metaphysical doubt as to the material facts" to defeat the motion. Evans v. Consumer Information & Dispute Resolution, No. 05 Civ. 8252, 2006 WL 1209904, at *7 (S.D.N.Y. May 5, 2006).  The non-moving party must set forth specific facts relaying the need for trial on a material issue as disputes that are "irrelevant or unnecessary" are insufficient to defeat summary judgment. Id. (quoting Anderson, 477 U.S. at 248).

In an effort to avoid to avoid the Court finding that Chartis' policy has been triggered as a matter of law and must drop down to fill the gaps in coverage left by the Reliance and The Home insolvencies, Chartis has asserted that the status of those insolvencies somehow creates genuine issues of material fact that prevent this Court from finding in favor of Defendants.  Chartis Opp. at 1, 5.  First, Chartis asserts that that Defendants' have failed to demonstrate that either Reliance or The Home are in fact insolvent.  That Chartis would seek to dispute a fact that is widespread common knowledge throughout at least the insurance industry is disingenuous.  Nevertheless, and to the extent that there remain any questions as to whether Reliance and The Home are currently insolvent, Defendants respectfully refer the Court to the records attached to the Declaration of Rene F. Hertzog, dated February 16, 2011, submitted in support thereof.

Chartis also seeks to avoid having the Court rule on whether its obligation to drop down has been triggered as a matter of law by asserting that issues of material fact exist with respect to the amount of any payment that may have been made or may still be made by the insolvent insurers' liquidators.  Contrary to Chartis' assertion, however, this is not an issue of material fact that precludes this Court from deciding whether coverage under the Chartis policy is triggered by the insolvencies of The Home and Reliance.  As set forth in Defendants' Motion, however, the only issue before this Court is whether The Home and Reliance policies constitute "valid and collectible" insurance such that the Chartis Policy applies only as excess over those policies and does not drop down to provide coverage.  Under New York law, however, where a policy contains language such as that present in the Chartis Policy, the phrase "collectible insurance" excludes the insurance of an insolvent company.  Gladstone v. D.W. Ritter Co., 508 N.Y.S.2d 880, 883 (N.Y. Sup. Ct. 1986); see also American Lumbermens Mut. Cas. Co. v. Lumber Mut. Cas. Ins. Co., 295 N.Y.S. 321, 324 (N.Y. App. Div. 1937) (interpreting "valid and collectible" to exclude insurance of an insolvent insurer); General Refractories Co. v. Allstate Ins. Co., No. 89-7924, 1994 WL 246312 (E.D. Pa. June 8, 1994) (same).  Thus, whether the Liquidators in the Reliance and The Home insolvencies have or will pay any amounts to Defendants is irrelevant and not material to the issue of whether the Chartis policy is required to drop down because of those insolvencies and the resulting lack of any "valid or collectible" insurance.[3]

---

[3] Just as with any other source of non-insurance indemnity, to the extent that the Reliance or The Home Liquidators actually have or will in the future pay any amounts to Defendants in connection with liabilities in the Bahamas Action, Chartis presumably will have the right to assert an offset to any amounts that it must pay under its insurance policy for those same liabilities.

III.   **CHARTIS' OBLIGATION TO ADVANCE DEFENSE COSTS HAS BEEN TRIGGERED**

    A.   **Defendants Have Met Their Burden of Showing at Least One Potentially Covered Claim**

Chartis asserts that Defendants have failed to presented admissible evidence to show that the Bahamas Litigation falls within the coverage provided by the Chartis Policy. Chartis is wrong. The duty to advance defense costs is established by the allegations in the underlying complaint and the insurance policy. Defendants attached to the following to their Motion: the Bahamas Complaint, the Chartis Policy, and the Primary Policy (Wong Dec., Exs. J, I, A). This Court need not look any further than those documents to determine that Chartis has an obligation to advance defenses costs to Defendants for their claim based on the Bahamas Litigation.

Indeed, as explained in Defendants' Opening Brief, under New York law, as with a duty to defend, an insurance company's duty to advance defense costs is triggered immediately once there exists allegations in an underlying complaint that bring the action within the scope of coverage provided by the policy. See Federal Ins. Co. v. Kozlowski, 792 N.Y.S.2d 397, 402-03 (N.Y. App. Div. 2005). This obligation exists without regard to whether the insurer will in the future be obligated to indemnify the insured. Indeed, the Chartis Policy provisions make this clear: Clause 9 of the policy, which addresses the advancement of defense costs, specifically states that such advancement shall be made "prior to the final disposition of the claim." See Wong Dec., Ex. I, Clause 9 (emphasis added). That the final outcome of the underlying litigation against the policyholder is not determinative of this duty is further highlighted by the presence of a clause in that same provision directing reimbursement to the insurance company if the claims are ultimately determined to be outside of coverage. See id. ("Such advance payments by the Insurer shall be repaid to the Insurer by the Insureds . . . in the event and to the

extent that the Insureds shall not be entitled under the terms and conditions of this policy to payment of such Loss.").

In addition, an insurance company seeking to preclude coverage through application of an exclusion bears a heavy burden of establishing that the limitation is in clear and unmistakable language without any other reasonable interpretation. See, e.g., Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co., 472 F.3d 33, 42-43 (2d Cir. 2006). Any such exclusions or exceptions from policy coverage must be specific and clear in order to be enforced. They "are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction." Seaboard Sur. Co. v. Gillette Co., 64 N.Y.2d 304, 311 (N.Y. 1984) (internal citations omitted). Further, the insurance company also must show that the exclusion applies to the particular case at hand and Defendants need only demonstrate that the Bahamas Complaint alleges wrongful acts that give rise "to the reasonable possibility of recovery under the policy." See Fitzpatrick v. American Honda Motor Co., Inc., 78 N.Y.2d 61, 65 (N.Y. 1991).

### B.   The Prior Acts Exclusion Does Not Negate Chartis' Duty to Advance Defense Costs

Chartis disputes that its policy provides coverage for the Bahamas Litigation on the basis of a "prior acts" exclusion for "Loss" (which includes defense costs) "arising out of claims for alleged Wrongful Acts occurring on or after November 8, 1993." See Wong Dec., Ex. I, End. 2. Chartis' argument has no merit because the Bahamas Action plainly alleges "wrongful acts" occurring after November 8, 1993.

In asserting that Defendants have failed to meet their burden of showing that there is at least once potentially covered claim in the Bahamas Litigation, Chartis ignore the numerous allegations in the Bahamas Complaint asserting wrongful acts occurring after November 8, 1993 See Wong Dec., Ex. J, ¶¶ 25, 29, 30, 32, 33, 36, 39, 40; p. 18, no.5, ). Because such allegations

bring the Bahamas Complaint within the scope of coverage, Chartis' reliance on the "prior acts" exclusion has no merit.

Indeed, New York courts have held that an insurance company disclaiming coverage on the basis of a "prior acts" exclusion must defend its policyholder where some of the allegations fall within the policy's coverage period. Thus, in Sacks & Sacks v. Home Ins. Co., 604 N.Y.S.2d 56 (N.Y. App. Div. 1993), the court held that a duty to defend existed despite the fact that many of the alleged wrongful acts fell within the prior acts exclusion because it was not clear that they all did and therefore the complaint did not fall "entirely within the policy exclusion". Id. at 139. Further, the single citation offered by Chartis in support of application of the prior acts is inapposite. Thus in 30 West 15th St. Owners Corp. v. Travelers Ins. Co., 563 N.Y.S.2d 784 (N.Y. App. Div. 1990), the court merely found that the wrongful acts "arose and occurred in 1986" a date before the date in the policy's prior acts exclusion. In contrast, here, the Bahamas action plainly alleges numerous "wrongful acts" occurring after the Chartis Policy's "prior acts" exclusion date and therefore Chartis' reliance on the exclusion has no merit.

IV.   **CHARTIS CANNOT REFUTE ITS OBLIGATION TO PROVIDE COVERAGE ONCE DEFENDANTS' LIABILITY REACHES ITS LIABILITY THRESHOLD**

Chartis concludes its opposition by all but conceding that Defendants are entitled to summary judgment as it relates to the "exhaustion" issue by offering no response other than to repeat its "prior acts" defense. Chartis Opp. at 19. Chartis fails even to attempt to distinguish any of Defendants' cases relating to the exhaustion issue as laid out in the Zeig[4] decision and its progeny. Each of Defendants' cases stand for the proposition that Chartis' policy is triggered

---

[4] Zeig v. Massachusetts Bonding & Ins. Co., 23 F.2d 665 (2d Cir. 1928).

once Defendants' liability reaches Chartis' policy limits without regard to whether payment has actually been made.[5]

While Chartis does discuss <u>Zeig</u>, it does so as part and parcel of its argument regarding the "drop-down" issue. <u>Zeig</u> does not stand for the proposition that a policy must provide drop-down coverage and Defendants do not suggest that it does. To the extent that Chartis attempts to distinguish <u>Zeig</u> (as it relates to its well-known "exhaustion" holding), the mere fact that Chartis' policy language is different than that at issue in <u>Zeig</u> is not sufficient to avoid applying <u>Zeig</u> to the circumstances here. When Judge Hand opined that a policy may explicitly require full payment of an underlying policy as a condition precedent to obtaining excess coverage, Judge Hand was referring to the imposition of a condition that the policyholder actually <u>collect</u> the full amount of the policies in order to properly be exhausted. It is of no moment that the Chartis Policy identifies a specific sum in its Limits of Liability provision as it still does not requires as a condition precedent to coverage <u>actual</u> collection.

## V.   CHARTIS HAS FAILED TO SHOW THAT ITS POLICY IS NOT REQUIRED TO DROP-DOWN

Chartis has not offered any relevant case law to refute Defendants' interpretation of the Chartis Policy as requiring it to provide "drop-down" coverage where there is no "valid and collectible" insurance available to the insured.

Chartis relies entirely on the trial court's opinion in <u>Ambassador Assocs. v. Corcoran</u>, 541 N.Y.S.2d 507 (N.Y. Sup. Ct. 1989) as supporting its position that the explicit terms of its policy provisions do not obligate it to provide drop-down coverage to Defendants to fill the gaps left by the insolvencies of The Home and Reliance. Chartis Opp. at 15. In <u>Ambassador</u>,

---

[5] Defendants' further incorporate by reference its arguments with respect to the <u>Zeig</u> "exhaustion" issue from Defendants' Exhaustion Brief submitted concurrently herewith.

however, the holding concerned a policy which explicitly stated that it was "in excess of the Underlying Insurance as shown in item 4 of the Declarations" and the court based its holding on the fact that the policy at issue "explicitly listed Mission's [the insolvent insurer] $10,000,000 policy as underlying insurance." Id.

Here, in contrast the Chartis Policy does not state that it is excess to any underlying insurance, let alone the Reliance and The Home policies. Those policies are not listed anywhere in the Chartis policy as underlying insurance and the Chartis policy does not follow form to the terms and conditions of any underlying insurance (as is the case with the Federal and Travelers policies.) Accordingly, the only support offered by Chartis is inapposite. As noted in the dissenting opinion in Ambassador Assocs. v. Corcoran, 79 N.Y.2d 871 (N.Y. 1992), under the circumstances present here, where the only applicable clause concerns Chartis being excess to "valid and collectible" insurance and not specific underlying insurance, an insolvency of otherwise applicable insurance requires a drop down.[6]

Moreover, Chartis' reliance on cases involving "other insurances" clauses as they relate to overlapping policies for the same risk actually supports Defendants -- indeed, Defendants do not dispute that the "other insurance" clause is meant to apply to overlapping policies. What Chartis fails to acknowledge is that in relation to the Reliance, Federal, The Home and Travelers tower, its policy is a (potentially) overlapping policy and not a part of a tower. While it is true that Commodore purchased a tower of insurance that each of the other excess insurers is clearly a part of, the Chartis Policy is separate and apart from that tower as it does not identify any underlying insurance schedule nor does it require the exhaustion of any specific policy before it

---

[6] Chartis has failed to even mention or dispute Defendants' citation to American Lumbermens Mut. Cas. Co. v. Lumber Mut. Cas. Ins. Co., 295 N.Y.S. 321 (N.Y. App. Div. 1937), which interprets "valid and collectible" to exclude the insurance of an insolvent insurer. Id. at 324.

is triggered.  As such, the "other insurance" provision is operative, and should Federal and Travelers not be required to drop down there is no other "valid and collectible" available to Defendants, and as such Chartis is obligated to drop down.

Finally, and as noted in the opening brief, at a minimum, when read together the "other insurance" and "limit of liability" provisions create an ambiguity and as such the provisions must be resolved in favor of Defendants and in favor of coverage.  See, e.g., Mossa v. Provident Life & Cas. Ins. Co., 36 F. Supp. 2d 524, 526 (E.D.N.Y. 1999).

### CONCLUSION

For all of the foregoing reasons, and all of the reasons discussed in Defendants' opening memorandum, Defendants' motion for partial summary judgment should be granted.

ANDERSON KILL & OLICK, P.C.

February 16, 2011

By:  /s/ Rene F. Hertzog

Finley T. Harckham
Alex D. Hardiman
Rene F. Hertzog

1251 Avenue of the Americas
New York, NY  10020
Telephone:  212-278-1000
Facsimile: 212-278-1733

Attorneys for Defendants