UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FEDERAL INSURANCE COMPANY,

Plaintiff,

- against -

THE ESTATE OF IRVING GOULD, MEHDI ALI, ALEXANDER M. HAIG, JR., THE ESTATE OF RALPH SELIGMAN, BURTON WINBERG AND J. EDWARD GOFF,

Defendants.

THE ESTATE OF IRVING GOULD, MEHDI ALI, THE ESTATE OF ALEXANDER M. HAIG, JR.,THE ESTATE OF RALPH SELIGMAN, BURTON WINBERG AND J. EDWARD GOFF,

Third-Party Plaintiffs,

- against -

CHARTIS INSURANCE COMPANY OF CANADA (f/k/a AMERICAN HOME ASSURANCE COMPANY (CANADA BRANCH)) AND AETNA CASUALTY AND SURETY COMPANY

Third-Party Defendants.

No. 10 Civ. 1160 (RJS)

**NOTICE OF APPEAL IN A CIVIL CASE**




**NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

Notice is hereby given that Defendants-Third Party Plaintiffs The Estate Of Irving Gould, Mehdi Ali, The Estate of Alexander M. Haig, Jr., The Estate Of Ralph Seligman, Burton

Winberg and J. Edward Goff (collectively, "Defendants") in the above-captioned action, hereby appeal to the United States Court of Appeals for the Second Circuit from: (i) the Memorandum and Order denying Defendants' motion for partial summary judgment and granting Plaintiff Federal Insurance Company's and Aetna Casualty and Surety Company's motions for judgment on the pleadings, dated September 28, 2011 (Doc. 67); and (ii) from the Order dismissing the case, dated October 30, 2011 and entered October 31, 2011 (Doc. 69).

The following are the parties to this action to be served with a copy of the notice of appeal:

DLA Piper LLP
Attorneys for Federal Insurance Company
Joseph G. Finnerty III, Esq.
1251 Avenue of the Americas
New York, New York 10020-1104

Boundas, Skarzynski, Walsh & Black, LLC
Attorneys for Aetna Casualty and Surety Company
James Sandnes, Esq.
One Battery Park Plaza, 32nd Floor
New York, NY 10004

November 21, 2011

ANDERSON KILL & OLICK, P.C.

By: [signature]
Finley T. Harckham
Alex D. Hardiman
Rene F. Hertzog
1251 Avenue of the Americas
New York, NY 10020
Telephone: 212-278-1000
Facsimile: 212-278-1733
Attorneys for Defendants-Third Party Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

No. 10 Civ. 1160 (RJS)

---

FEDERAL INSURANCE COMPANY,

Plaintiff,

VERSUS

THE ESTATE OF IRVING GOULD, *et al.*,

Defendants.

---

THE ESTATE OF IRVING GOULD, *et al.*,

Third-Party Plaintiffs,

VERSUS

CHARTIS INSURANCE COMPANY OF CANADA (f/k/a American Home Assurance Company (Canada Branch)) and TRAVELERS CASUALTY AND SURETY COMPANY (f/k/a The Aetna Casualty and Surety Company),

Third-Party Defendants.

---

MEMORANDUM AND ORDER
September 28, 2011

---

RICHARD J. SULLIVAN, District Judge:

Plaintiff Federal Insurance Company ("Federal") brings this action seeking a declaratory judgment that the excess directors and officers liability insurance policies that it issued to non-party Commodore International Limited ("Commodore") have not been triggered and do not provide coverage to Defendants.

Before the Court are three motions by the parties. Federal and Third-Party Defendant Travelers Casualty and Surety Company ("Travelers"), an additional provider of excess insurance to Defendants, have each moved for judgment on the pleadings seeking a declaration that their policies do not require them to "drop down" to fill the gaps in Defendants' coverage created by the insolvency of certain underlying insurers. Defendants have

moved for partial summary judgment seeking a declaration that Federal's and Travelers' coverage obligations are triggered once the total amount of Defendants' covered losses exceeds the limits of underlying insurance policies, regardless of whether such amounts have actually been paid by the underlying insurers. For the reasons that follow, Federal's and Travelers' motions for judgment on the pleadings are granted, and Defendants' motion for partial summary judgment is denied.

## I. BACKGROUND

### A. Facts[1]

Defendants are former officers and directors of Commodore, which at one time was a leader in the computer industry.[2] (Compl. ¶¶ 2, 14-20.) Commodore ceased operating in 1994 and shortly thereafter filed for protection under the United States Bankruptcy Code. (*Id.* ¶ 2.) Since filing for bankruptcy, Commodore and its officers and directors have been named in a variety of lawsuits in jurisdictions throughout the world. (*Id.* ¶ 39.) All of these lawsuits have been resolved except for a pending action in the Supreme Court of the Commonwealth of the Bahamas, in which the plaintiffs seek damages in the amount of $100 million (the "Bahamas Litigation"). (*Id.* ¶ 40.) To date, Defendants have incurred approximately $14 million in losses as a result of the various lawsuits. (*See* Decl. of Boji Wong, dated December 15, 2010, Doc. No. 46 ("Wong Decl.") at ¶ 6.)

At the time of its bankruptcy filing, Commodore had in place a directors and officers liability insurance tower totaling $51 million in coverage provided by six different insurance companies through nine different policies (the "Tower"). (Compl. ¶ 3.) As illustrated by the chart below, Federal issued two policies in the Tower: a second-layer excess policy of $5 million, which is excess of $15 million in underlying insurance, and a fifth-layer excess policy of $5 million that is excess of $30 million in underlying insurance. Travelers issued a seventh-layer excess policy of $10 million that is excess of $40 million in underlying insurance.

| **Policy** | **Liability Limit** | **Covers Liability in Excess Of** |
|---|---|---|
| Self-Insured | $1,000,000 | N/A |
| Primary: Chartis | $10,000,000 | N/A |
| 1st Excess: Reliance | $5,000,000 | $10,000,000 |
| 2nd Excess: Federal | $5,000,000 | $15,000,000 |
| 3rd Excess: The Home Insurance Co. | $5,000,000 | $20,000,000 |
| 4th Excess: Reliance | $5,000,000 | $25,000,000 |
| 5th Excess: Federal | $5,000,000 | $30,000,000 |
| 6th Excess: The Home Insurance Co. | $5,000,000 | $35,000,000 |
| 7th Excess: Travelers | $10,000,000 | $40,000,000 |
| 8th Excess: Chartis | $1,000,000 | $50,000,000 |

[1] The following facts, which are not in dispute, are taken from the pleadings, the parties' Local Rule 56.1 Statements, the affidavits submitted in connection with the instant motions, and the exhibits attached thereto.

[2] Before his death, Irving Gould was the chairman of the board of directors and CEO of Commodore. (Compl. ¶ 14.) Gould's estate is being administered in the Bahamas. (*Id.*) The other Defendants are Mehdi Ali, Alexander Haig, Jr., the estate of Ralph Seligman, Burton Winberg, and J. Edward Goff. (*Id.* ¶¶ 15-19.)

(Compl. ¶¶ 26-35.)[3]

In 2001, prior to Defendants' submission of claims pursuant to the excess policies, Reliance Insurance Company ("Reliance") was ordered into liquidation at the request of the Pennsylvania Insurance Department. (*Id.* ¶ 42-44.) Subsequently, in 2003, the Home Insurance Company ("Home Insurance") was ordered into liquidation at the request of the New Hampshire Insurance Commissioner. (*Id.* ¶¶ 45-46.) Because of the insolvency of Reliance and Home Insurance, Defendants will not be reimbursed for claims filed under the first, third, and fourth-layer excess policies.

The Federal and Travelers policies (together, the "Excess Policies") are "follow form" policies and provide coverage for liability of directors and officers according to the same terms as described in the primary policy provided by Chartis. (Decl. of Rachel Stevens, dated December 15, 2010, Doc. No. 39 ("Stevens Decl."), Ex. 2-A.) Therefore, because the primary policy requires the insurer to advance defense costs to Defendants prior to the final disposition of a claim against them, Federal and Travelers (together, the "Excess Insurers") are likewise obligated to advance such costs once the Excess Policies are triggered. (*Id.*)

The Excess Policies also contain provisions requiring the "Maintenance of Underlying Insurance." The Federal policies, for example, state that:

> [T]he Underlying Policy(ies) . . . shall be maintained during the Policy Period in full effect and affording coverage at least as broad as the Primary Policy, except for any reduction of the aggregate limit(s) of liability available under the Underlying Insurance solely by reason of payment of losses thereunder. Failure to comply with the foregoing shall not invalidate this policy but the Company shall not be liable to a greater extent than if this condition had been complied with.

(*Id.*, Exs. 2-B, 2-C.) The Travelers policy contains a nearly identical provision. (*See* Decl. of James Sandnes, dated December 15, 2010, Doc. No. 42 ("Sandnes Decl."), Ex. 1 at 2.)

Additionally, the Excess Policies contain provisions that specify when they are triggered by the exhaustion of the underlying policies. The Excess Policies provide, in relevant part:

> In the event of the exhaustion of all of the limit(s) of liability of such Underlying Insurance solely as a result of payment of losses thereunder, the remaining limits available under this policy shall . . . continue for subsequent losses as primary insurance and any retention specified in the Primary Policy shall be imposed under this policy.

(Stevens Decl., Exs. 2-B, 2-C; Sandnes Decl., Ex. 1.)

As a result of the various lawsuits that have been resolved, Defendants have exhausted the $10 million limit of Chartis' primary policy. Due to the insolvency of Reliance, however, Defendants are unable to obtain advance defense costs under the first-layer excess or fourth-layer excess policies.

[3] The Travelers policy was initially issued by the Aetna Casualty and Surety Company. Additionally, the Chartis policies were initially issued by the American Home Assurance Company. Throughout this Memorandum and Order, references to the underwriters of these policies will be to "Travelers" and "Chartis," respectively.

In 2005, Federal entered into an interim funding agreement (the "IFA") pursuant to which Federal agreed to advance certain defense costs to Defendants.[4] (*See* Compl. ¶ 41.)

The parties now present two disputes: (i) whether the Excess Insurers are required to "drop down" and advance to Defendants the defense costs that would have been provided but for the insolvency of the underlying insurers, and (ii) whether the Excess Policies are triggered once the aggregate amount of Defendants' covered losses exceeds each policy's attachment point, or whether the underlying policies are only exhausted by the actual payment of claims by the underlying insurers.

## II. Procedural History

Federal commenced this action on February 16, 2010. On July 19, 2010, Defendants filed an answer to the complaint and asserted counterclaims against Federal for declaratory judgment and breach of contract. On August 9, 2010, Defendants filed a third-party complaint against Chartis and Travelers asserting claims for declaratory judgment and breach of contract. On December 15, 2010, Federal and Travelers moved for judgment on the pleadings, seeking a declaration that their policies do not require them to "drop down" to fill the gaps created by the insolvency of certain underlying insurers. Also on December 15, 2010, Defendants moved for partial summary judgment, seeking a declaration that Federal's and Travelers' coverage obligations are triggered once the total amount of Defendants' loss exceeds the limits of any underlying insurance policies, regardless of whether such amounts have actually been paid by the underlying insurers. The motions were fully submitted as of February 16, 2011.

## III. Discussion

### A. Excess Insurers' Obligation to Provide Drop-Down Coverage

The Excess Insurers have each moved for judgment on the pleadings, seeking a declaration that they are not required to drop down and fill the gaps in coverage created by the insolvency of certain underlying insurers.

Courts evaluate motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure under the same standard as a motion pursuant to Rule 12(b)(6) for failure to state a claim. *See Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994). In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *see Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (applying the same standard to Rule 12(c) motion). To state a legally sufficient claim, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. ---, 129 S. Ct. 1937, 1949 (2009). By contrast, a pleading that only "offers 'labels and conclusions' or 'a formulaic recitation

---

[4] While Federal initially reserved all of its rights under the Excess Policies, Federal subsequently agreed in 2006 that it would not seek reimbursement of amounts advanced under the IFA. (*See* Federal Mem. at 8 n.1.)

of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). If the plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

As an initial matter, the parties dispute whether the Court should engage in a choice-of-law analysis between New York and Pennsylvania law. The Excess Insurers assert that Pennsylvania law governs this dispute because Commodore's principal place of business and home office was in West Chester, Pennsylvania. Defendants contend that there is no conflict between New York and Pennsylvania law on the substantive issues raised in this matter and, therefore, the Court "need not engage in a choice-of-law analysis." (Defs.' Opp'n at 10.)

Because this is a diversity action, the Court applies the choice of law principles of the forum state in order to determine which state's substantive law applies. *See Banker v. Nighswander, Martin & Mitchell*, 37 F.3d 866, 871 (2d Cir. 1994). In New York, "the first question to resolve in determining whether to undertake a choice of law analysis is whether there is an actual conflict of laws." *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998) (citing *In re Allstate Ins. Co.*, 613 N.E.2d 936 (N.Y. 1993)). "Laws are in conflict where the applicable law from each jurisdiction provides different substantive rules." *Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004) (internal quotation marks and alterations omitted); *accord Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 331 (2d Cir. 2005) (stating that an actual conflict is one that could "have a significant possible effect on the outcome of the trial"). "In the absence of substantive difference, however, a New York court will dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it." *Liberty Mut.*, 363 F.3d at 143.

Here, there is no actual conflict of laws because both New York and Pennsylvania law clearly provide that an excess insurer is not required to fill gaps in coverage created by the insolvency of an underlying insurer. As other courts in this district have noted, under New York law, "an excess insurer is not required to drop down to provide coverage merely because the underlying primary insurer is insolvent." *U.S. Fid. & Guar. Co. v. Treadwell Corp.*, 58 F. Supp. 2d 77, 88 n.11 (S.D.N.Y. 1999) (citing *Zeig v. Massachusetts Bonding & Ins. Co.*, 23 F.2d 665, 666 (2d Cir. 1928)); *accord Pergament Distrib., Inc. v. Old Republic Ins. Co.*, 513 N.Y.S. 2d 467, 468-69 (2d Dep't 1987) (finding that excess insurer was not required to drop down and provide primary coverage when primary carrier was unable to pay due to insolvency). Pennsylvania law likewise provides that an excess insurer "is not required to drop down and provide [the insured] with primary coverage for the period in which [the insolvent underlying carrier] was the primary insurer." *Gen. Refractories Co. v. Allstate Ins. Co.*, No. Civ. A. 89-7924, 1994 WL 246375, at *7 (E.D. Pa. June 8, 1994); *accord Donegal Mut. Ins. Co. v. Long*, 597 A.2d 1124, 1127-29 (Pa. 1991) (finding that excess insurer is not required to drop down to provide coverage where the underlying insurer is insolvent, unless required to do so by the terms of the policy). Accordingly, the Court will dispense with any further choice-of-law analysis.

Notwithstanding New York's and Pennsylvania's clear rejection of an automatic drop-down rule, Defendants argue that "[s]ophisticated insurance companies

such as Federal and Travelers have the ability to draft policy language that expressly indicates what should occur in the event of circumstances such as the insolvency of an underlying insurer." (Defs.' Opp'n at 21.) Defendants cite to policies that Federal sold to other customers that contained "anti drop-down" clauses, which expressly disclaimed responsibility for gaps in coverage resulting from the insolvency of an underlying insurer. (*Id.*) Defendants argue that because neither Federal nor Travelers chose to include such "anti drop-down" language here, "discovery is necessary to determine the intent and application of the relevant policy provisions." (*Id.* at 20.)

In both New York and Pennsylvania, however, courts may only look to extrinsic evidence of the parties' intentions where the language of the contract is ambiguous. *See Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002) ("If the court finds that the contract is not ambiguous it should assign the plain and ordinary meaning to each term and interpret the contract without the aid of extrinsic evidence.") (internal quotation marks omitted); *Great Am. Ins. Co. v. Norwin Sch. Dist.*, 544 F.3d 229, 243 (3d Cir. 2008) ("Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties."). Here, there is no ambiguity as to the insurers' obligation to drop down. The insurance contracts themselves make no mention whatsoever of such an obligation. To the contrary, the policies expressly state that, in the event that Defendants fail to maintain underlying insurance, the insurers "shall not be liable to a greater extent than if this condition had been complied with." (Stevens Decl., Exs. 2-B, 2-C.) This language expressly demonstrates that the coverage provided by the Excess Insurers will not be enlarged to compensate for gaps in underlying coverage.[5]

Based on the unambiguous language of the policies at issue, the Court finds that the Excess Insurers have no obligation to drop down to provide coverage that should have been provided by the underlying, now insolvent, insurers. Accordingly, Plaintiff's and Travelers' motions for judgment on the pleadings are granted.

B. Exhaustion of Underlying Policies

Defendants have moved for partial summary judgment, seeking a declaration that Federal's and Travelers' coverage obligations are triggered once the total amount of Defendants' covered losses exceeds the limits of any underlying policies, regardless of whether the underlying claims have actually been paid.[6]

---

[5] Defendants likewise fail to provide any support for their strained argument that there is an industry custom that an insurance contract's silence on drop-down coverage represents the insurer's assent to provide such coverage. As with evidence of the intentions of the parties generally, evidence of custom or usage in the industry is only relevant when the language of the contract is ambiguous. *See, e.g., Girard Trust Bank v. Life Ins. Co. of N. Am.*, 364 A.2d 495, 498 (Pa. Super. Ct. 1976) ("[I]f the terms of the written contract are clear and unambiguous[,] custom and usage . . . are not admissible to interpret the contract.").

[6] Defendants initially moved for partial summary judgment against Chartis as well, arguing that Chartis' eighth-layer excess policy, which has substantially different language than the Federal and Travelers policies, requires Chartis to provide drop-down coverage. By letter dated June 27, 2011, however, Defendants informed the Court that they and Chartis reached a settlement in principle. As such, Defendants requested that the Court "withhold ruling on Defendants' fully briefed Motion for Partial Summary Judgment as to Chartis . . . to allow the parties to finalize their agreement in writing." By subsequent letters dated August 19, 2011 and September 16, 2011, Defendants informed the Court

1. Ripeness

Federal argues that Defendants' motion for summary judgment should be dismissed because it "presents no ripe case or controversy." (Federal Opp'n at 6.) Federal asserts that because Defendants have not yet sustained losses equivalent to the attachment amounts of the Excess Policies, the declaration sought by Defendants involves a "hypothetical claim for coverage." (*Id.*) Defendants counter that the pending Bahamas Litigation creates a strong likelihood that Defendants' covered losses will soon exceed the liability limits of the policies underlying the Excess Policies.

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). In order for a motion for declaratory judgment to be ripe for adjudication, the court must be presented with "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Olin Corp. v. Consol. Aluminum Corp.*, 5 F.3d 10, 17 (2d Cir. 1993) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

Here, Defendants' motion for partial summary judgment satisfies the standard for ripeness. First, the parties have articulated a substantial controversy – namely, whether the Excess Policies are triggered when Defendants' covered losses surpass the limits of the underlying policies or whether the Excess Policies are only triggered upon payment of underlying claims.

Second, the controversy is of sufficient immediacy to warrant the issuance of a declaratory judgment. While Federal correctly notes that Defendants have not yet sustained losses in excess of $30 million – the amount at which Federal's fifth-layer excess policy is triggered – the plaintiffs in the Bahamas Litigation are seeking $100 million in damages. In light of the fact that Defendants have already incurred approximately $14 million in losses, and that trial in the Bahamas Litigation is scheduled to commence by the end of 2011, there exists a realistic possibility that Defendants will be in a position to file a claim under the Excess Policies in the coming months. Indeed, the Second Circuit has found that declaratory judgment actions defining parties' rights with respect to an insurer's potential future liability present ripe controversies. *See Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992) ("[L]itigation over insurance coverage has become the paradigm for asserting jurisdiction [of a declaratory judgment action] despite future contingencies that will determine whether a controversy ever actually becomes real." (internal quotation marks omitted)); *Emp'rs Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 278 (2d Cir. 2008) (reversing district court's dismissal for lack of a justiciable case or controversy and instructing courts to "focus on the practical likelihood that the contingencies will occur" (internal citations omitted)).

---

that the settlement is still being finalized and requested that the Court continue to withhold ruling on Defendants' motion with respect to Chartis. Because Defendants and Chartis have had ample opportunity to execute a settlement, and because the Court intends to completely dispose of the motions pending before it, Defendants' motion for partial summary judgment with respect to Chartis is denied without prejudice to renewal should the settlement ultimately fall through.

Accordingly, the Court finds that Defendants' motion for partial summary judgment is ripe for adjudication.

2. Merits

Defendants ask this Court to enter a declaratory judgment that "Federal['s] and Travelers' coverage obligations are triggered once the total amount of Defendants' defense and/or indemnity obligations exceeds the limits of any insurance policies underlying their respective policies, regardless of whether such amounts have actually been paid by those underlying insurance companies." (Defs.' Mot. at 1.) Because the relief sought by Defendants contradicts the plain language of the Excess Policies, Defendants' motion is denied.

As noted above, the Excess Policies contain language that conditions the attachment of coverage on the payment of underlying claims:

> In the event of the exhaustion of all of the limit(s) of liability of such Underlying Insurance *solely as a result of payment of losses thereunder*, the remaining limits available under this policy shall . . . continue for subsequent losses as primary insurance and any retention specified in the Primary Policy shall be imposed under this policy.

(Stevens Decl., Exs. 2-B, 2-C; Sandnes Decl., Ex. 1 (emphasis added).)

The express language of these policies establishes a clear condition precedent to the attachment of the Excess Policies. In each policy, the excess coverage is not triggered until the underlying insurance is exhausted "solely as a result of payment of losses thereunder." It is clear from the plain language of the Excess Policies, therefore, that the excess coverage will not be triggered solely by the aggregation of Defendants' covered losses. Rather, the Excess Policies expressly state that coverage does not attach until there is *payment* of the underlying losses.

Defendants, nevertheless, cite cases applying New York and Pennsylvania law in support of their argument that "the excess policies are triggered when Defendants' liability reaches the excess insurers' respective policy limits." (Defs.' Reply at 6.) The cases cited by Defendants, however, are inapposite as they principally address situations in which a policy was deemed exhausted as a result of an insured's below-limit settlement of indemnity claims with an underlying carrier. *See Koppers Co. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1454 (3d Cir. 1996) (holding that a settlement with a primary insurer "functionally 'exhausts' primary coverage and therefore triggers the excess policy"); *Zeig v. Mass. Bonding & Ins. Co.*, 23 F.2d 665 (2d Cir. 1928) ("The claims are paid to the full amount of the policies, if they are settled and discharged, and the primary insurance is thereby exhausted.").[7] These cases provide no guidance for the Court's resolution of the issue at bar, because in those cases the

[7] The two other cases relied upon by Defendants are also distinguishable from the facts of the instant matter. *See Pereira v. Nation Union Fire Insurance Co. of Pittsburgh, PA*, No. 04 Civ. 1134 (LTS), 2006 WL 1982789 (S.D.N.Y. July 12, 2006) (denying excess insurer's motion to dismiss where the language of the policy – which differs from the language of the policies here – was ambiguous with respect to whether actual payment of underlying "claims or losses" was necessary to trigger excess policy); *M.A.G. Enter., Inc. v. Nat'l Union Fire Ins. Co.*, No. 3855, 2005 WL 503053 (Pa. Comm. Pl. Feb. 16, 2005) (holding that an excess carrier is not required to drop down to provide coverage in place of an insolvent underlying carrier, but making no findings with respect to the exhaustion of such underlying coverage).

insured agreed to accept partial reimbursement for his losses while maintaining responsibility for the uncompensated portion of his claim. That scenario is in contrast to Defendants' reading of the Excess Policies, pursuant to which the liability covered by the insolvent insurers would not be discharged by any payment or settlement, but would simply be bypassed.

Indeed, unlike the facts of *Zeig*, here the Excess Insurers have a clear, bargained-for interest in ensuring that the underlying policies are exhausted by actual payment. If Defendants were able to trigger the Excess Policies simply by virtue of their aggregated losses, they might be tempted to structure inflated settlements with their adversaries in the Bahamas Litigation that would have the same effect as requiring the Excess Insurers to drop down and assume coverage in place of the insolvent carriers. As the Court in *Zeig* noted, parties are free to impose conditions precedent to the attachment of excess policies in order to prevent such a result. *See Zeig*, 23 F.2d at 666. The Excess Insurers, demonstrating impressive foresight, obviously chose to do so here.

Accordingly, based on the plain language of the Excess Policies, which expressly conditions liability on the exhaustion of the underlying insurance through the "actual payment of losses," Defendants' motion for partial summary judgment must be denied.

IV. CONCLUSION

For the foregoing reasons, Federal's and Travelers' motions for judgment on the pleadings are granted. Defendants' motion for partial summary judgment is denied with prejudice with respect to Federal and Travelers, and is denied without prejudice with respect to Chartis. Additionally, within 30 days of the date of this Order, the parties shall submit a joint letter apprising the Court of the status of the remaining claims, including whether further discovery is necessary. The Clerk of Court is respectfully directed to terminate the motions located at Doc. Nos. 38, 41, and 44.

SO ORDERED.

Dated: September 28, 2011
New York, New York

RICHARD J. SULLIVAN
United States District Judge

* * *

Plaintiff Federal Insurance Company is represented by Joseph Gregory Finnerty, III, Joshua Samuel Sohn, and Rachel Stevens of DLA Piper U.S. LLP, 1251 Avenue of the Americas, New York, NY 10020.

Defendants The Estate of Irving Gould, Mehdi Ali, Alexander M. Haig, Jr., The Estate of Ralph Seligman, Burton Winberg, and J. Edward Goff are represented by Finley Harckham, Alex Hardiman, James Serritella, and Rene Hertzog of Anderson Kill & Olick, P.C., 1251 Avenue of the Americas, New York, NY 10020.

Third-Party Defendant Travelers Casualty and Surety Company is represented by James Sandnes and Tammy Yuen of Boundas Skarzynski Walsh & Black, One Battery Park Plaza, New York, NY 10004.

Third-Party Defendant Chartis Assurance Company is represented by Alexander Lorenzo of Alston & Bird, LLP, 90 Park Avenue, New York, NY 10016.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9-28-11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FEDERAL INSURANCE CO.,

Plaintiff,

-v-

THE ESTATE OF IRVING GOULD, *et. al.*,

Defendants.

No. 10 Civ. 1160 (RJS)
ORDER

RICHARD J. SULLIVAN, District Judge:

The Court is in receipt of a letter from the parties dated October 28, 2011, stating that in light of the Court's September 28, 2011 Memorandum and Order, as well as the settlement with respect to the claims asserted against third-party Defendant Chartis Insurance Company of Canada, the parties "believe that all remaining claims and third-party claims should be dismissed with prejudice." Accordingly, IT IS HEREBY ORDERED that this case is dismissed with prejudice but without costs. However, within thirty days of the date of this Order, any party may send a letter requesting to restore this action to the undersigned's calendar. Upon receipt of such a letter, this action will be restored.

SO ORDERED.

Dated: October 28, 2011
New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ____
DATE FILED: 10-30-11